UNITED STATES of America,

v.

STAUFFER CHEMICAL COMPANY.

No. 80-1029.

United States District Court,
M. D. Tennessee,
Columbia Division.

April 17, 1981.

Hal D. Hardin, U.S. Atty., Irvin Kilcrease, Asst. U.S. Atty., Nashville, Tenn., Judson W. Starr, Washington, D.C., for plaintiff.

Robert J. Walker, Nashville, Tenn., Charles F. Lettow and Eric C. Jeffrey, Washington, D.C., for defendant.

## MEMORANDUM

WISEMAN, District Judge.

This case is before the Court on motion of plaintiff, United States for the Environmental Protection Agency, for contempt and motion of defendant, Stauffer Chemical Company, to quash an administrative search warrant. The central issue in the case is whether the words "authorized representative" in section 114(a)(2) of the Clean Air Act include private, independent contractors or are limited to employees of the Environmental Protection Agency. The Court holds that private contractors may be considered authorized representatives under the Act.

### Facts

On August 7, 1980, the United States for the Environmental Protection Agency [hereinafter EPA] obtained and attempted to execute an administrative search warrant to inspect an elemental phosphorus producing plant of Stauffer Chemical Company [hereinafter Stauffer] in Mt. Pleasant, Tennessee. EPA sought the warrant[1] pursuant to its authority under section 114 of the Clean Air Act, 42 U.S.C. § 7414.

EPA had contracted with PEDCo Environmental, Inc., to conduct overview inspections. EPA, PEDCo, and PEDCo employees have entered into agreements that are intended to hold the employees to strict confidentiality. *See* discussion of confidentiality measures *infra*. When representatives of EPA, the Tennessee Department of Public Health, and PEDCo arrived at the Stauffer plant, the PEDCo employee was denied entry, unless he executed an elaborate nondisclosure agreement with Stauffer. Stauffer sought the nondisclosure agreement to protect it from disclosure of trade secrets or other proprietary information. The PEDCo employee refused to execute the nondisclosure agreement because it contained provisions inconsistent with EPA's enforcement policies. One of the most obnoxious provisions would have required the EPA contractor to give the plant two weeks' notice of the date of an inspection.

On August 8, 1980, EPA brought this civil contempt proceeding against Stauffer because of the refusal to allow the PEDCo employee into the plant. That same day Stauffer moved to quash the administrative search warrant issued by the Magistrate. These matters were consolidated for hearing on August 29, 1980. Stauffer argues that section 114 of the Clean Air Act does not authorize private contractors to carry out EPA plant inspections, and that EPA is not authorized to use an ex parte proceeding to obtain a warrant to inspect plant premises.

### Discussion

■ At the outset the Court notes that counsel for both sides have submitted excellent briefs in support of their respective theories. Although well-researched and presented memoranda always aid the Court in its decision-making process, little could make resolution of the section 114 question easier. District courts in other circuits have split on this issue.[2] Writing on a clean

---

1. The warrant provided, in part, that:

 EPA, through its duly authorized full-time employees, and accompanying, authorized representatives under contract with EPA, the United States Marshal or any other federal officer, are hereby entitled to and shall be authorized and permitted to have entry upon the [Stauffer Chemical plant] premises during normal operating hours for the purpose of conducting an inspection, sampling, and monitoring pursuant to Section 114 of the Clean Air Act.

2. *Bunker Hill Co. v. EPA*, No. 80–2087 (D.Idaho Oct. 1, 1980) (authorized representative includes private contractors); *In re Alcoa*, No. M–30–13 (M.D.N.C. Aug. 5, 1980) (decision of Magistrate that authorized representative includes private contractors affirmed); *In re Stauffer Chemical Co.*, 14 Envir.Rep. (BNA) 1737 (D.Wyo. June 24, 1980) (authorized representative does not include private contractors).

slate in this Circuit, this Court holds that "authorized representative" may include private contractors.

### Authorized Representative

Section 114(a)(2) of the Clean Air Act provides that:

> [T]he Administrator or his authorized representative, upon presentation of his credentials—
>
> (A) shall have a right of entry to, upon, or through any premises of such person or in which any records required to be maintained under paragraph (1) of this section are located, and
>
> (B) may at reasonable times have access to and copy any records, inspect any monitoring equipment or method required under paragraph (1), and sample any emissions which such person is required to sample under paragraph (1).

42 U.S.C. § 7414(a)(2) (emphasis added).

Stauffer argues that only officers and employees of EPA were contemplated as authorized representatives. For support, Stauffer relies on an *in pari materia* construction of section 114 and sections 206 and 208, and the legislative history of the 1970 Clean Air Act Amendments and the 1972 Clean Water Act Amendments. More generally, Stauffer urges that Congress did not intend for private parties to participate in plant searches because law enforcement searches are traditionally carried out by public officials.

Under sections 206(c) and 208(a), 42 U.S.C. §§ 7525(c), 7542(a), only officers or employees duly designated by the Administrator may participate in motor vehicle plant inspections. Stauffer says that this limitation should be read into section 114 because it clearly evinces Congress' intent regarding who can participate in plant inspections. EPA also regards the difference between sections 114 and 206 and 208 as significant, but suggests that the difference was intended to reflect a measured congres-

sional choice. The Court finds EPA's construction more persuasive.

Section 114 contains two references to "authorized representatives." In addition to subsection (a)(2), subsection (c) allows confidential information obtained under subsection (a) to be disclosed to "other *officers, employees, or authorized representatives* of the United States concerned with carrying out this Act." 42 U.S.C. § 7414(c) (emphasis added). That Congress intended authorized representatives to be distinguishable from officers and employees is obvious from the disjunctive listing in this section. If authorized representatives were limited to officers or employees, the inclusion of authorized representatives in this subsection would have been mere surplusage. The Court will not conclude that Congress intended to be redundant. Moreover, section 114 concerns inspections generally and specifically exempts 42 U.S.C. § 7521 *et seq.*, the motor vehicle plant inspection provisions, from its scope.

Stauffer also argues that clear evidence of congressional intent comes from the legislative history of the Clean Water Act Amendments of 1972, which were modeled after the Clean Air Act Amendments of 1970. In discussing the inspection and entry provisions of the Clean Water Act, section 308, 33 U.S.C. § 1318, two years after the Clean Air Act Amendments had been passed, the Senate Public Works Committee Report limited authorized representatives to full-time EPA employees.

> It should be noted that the authority to enter, *as under the Clean Air Act,* is reserved to the Administrator and his authorized representatives *which such representatives must be full time employees of the [EPA].* The authority to enter is not extended to contractors with the EPA in pursuit of research and development.

Sen.Rep.No.92–414, 92d Cong., 2d Sess. 63 (1971), *reprinted in* [1972] U.S.Code Cong. & Ad.News 3668, 3729 (emphasis added). Clean Water Act section 308(a)(B) is virtu-

ally identical to section 114 of the Clean Air Act.[3]

This portion of the legislative history of section 308 of the Clean Water Act does give the Court pause. The two statutes concern environmental matters; the Clean Water Act was even modeled after the Clean Air Act. The temporal difference in when the words authorized representative were used is not that great, a mere two years. Yet it is difficult to attribute a construction to a statute by virtue of statements made after the statute was enacted. The courts must be concerned with what the legislature that enacted the statute in question meant when the statute was enacted, not what was meant when other legislation was considered years later.

■ The last sentence of the significant paragraph of the Clean Water Act legislative history states that contractors will not have authority to enter "with the EPA in pursuit of research and development." Section 103 of the Clean Air Act, however, clearly provides for the use of "private agencies, institutions, and organizations, and individuals," 42 U.S.C. § 7403(b)(4), to "conduct investigations and research and make surveys concerning any specific problem of air pollution," *id.* § 7403(a)(3). This lack of congruence between the legislative history of the Clean Water Act and the provisions of the Clean Air Act makes the relevance of the legislative history of the Clean Water Act questionable. Postenactment statements should be used only sparingly as determinative of legislative intent because of the basic unreliability of statements made with nothing at stake regarding the earlier legislation. A better view of the legislative intent as expressed in legislative history is available when the relevant sections of the Clean Air Act Amendments

of 1970 are traced through the maze of legislative committees to enactment.

On June 3, 1970, the Committee on Interstate and Foreign Commerce of the House of Representatives reported out its version of the amendments to the Clean Air Act, which limited entries to "officers or employees duly designated by the Secretary." [4] H.R. 17255, 91st Cong., 2d Sess., *reprinted in* Legislative History of the Clean Air Amendments of 1970, at 918, 923 (1974) [hereinafter cited as Legislative History of 1970]. The Senate version of the Clean Air Amendments was reported out of the Committee on Public Works on September 17, 1970, and it provided for entry by "the Secretary or his authorized representative." S. 4358, 91st Cong., 2d Sess., *reprinted in* Legislative History of 1970 at 570. The Conference Committee obviously resolved the conflict in favor of the Senate version because the enacted statute uses the same terminology. The plain meaning of authorized representative is broader than duly designated officers or employees. That the Conference Committee and the Congress as a whole chose to enact the broader terms into law is significant.

The final and Senate versions differed from the House version in another significant respect. The requirement of written notice of inspections, contained in the House draft, was omitted in the Senate and final versions. *See* 42 U.S.C. § 7414(a)(2); Legislative History of 1970 at 151, 570, 918, 923. The philosophy of the Senate and House versions appears to have differed. The Senate version granted the agency more power and authority to enforce the provisions: the requirement of notice of inspections was omitted from the Senate version. Because subsection (c) of section

---

3. [T]he Administrator or his authorized representative, upon presentation of his credentials—

 (i) shall have a right of entry to, upon, or through any premises in which an effluent source is located or in which any records required to be maintained under clause (A) of this subsection are located, and
 (ii) may at reasonable times have access to and copy any records, inspect any monitoring

equipment or method required under clause (A), and sample any effluents which the owner or operator of such source is required to sample under such clause.
33 U.S.C. § 1318(a)(B).

4. At that time the Secretary of Health, Education, and Welfare was in charge of air pollution matters.

114 includes authorized representatives in the disjunctive with officers and employees, and because the Conference Committee obviously chose the Senate version over the House version the Court concludes that authorized representative means more than simply officers or employees of the agency.

The power to participate in administrative searches, Stauffer argues, should not be extended to private contractors. Because historically search powers have been entrusted only to public officials, Stauffer contends that the Court should not read Congress' intent as extending the power to private contractors without more specific statutory language.

The relevance of the common law and other historical antecedents to plant inspection searches is minimal because of the different interests at stake. The Clean Air Act embodies a system that comprehensively regulates air pollution. *See* W. Rodgers, Handbook on Environmental Law 208–353 (1977). Although some court actions were available to attack pollution at common law, such as nuisance abatement, modern pollution legislation represents a dramatic change toward governmental regulation, supervision, and enforcement. Air pollution and water pollution control guidelines cover matters so complex, such as ambient air quality standards and effluent limitations, that simple exercise by the state of its police power was determined to be ineffective. Federal enforcement was recognized as a prerequisite to meaningful pollution control. Congress expressly recognized that private agencies would be helpful in the investigation and research aspect of air pollution control. 42 U.S.C.

§ 7403(a)(3), (b)(4). Congress considered private contractors proper recipients of confidential information when duly authorized by the Administrator, *id.* § 7414(c). Thus, it is not unreasonable to conclude that Congress entrusted private parties with the power to enter and conduct onsite monitoring inspections.

Stauffer fears exposure of its proprietary processes by the private contractor who was hired by EPA. Although Stauffer concedes that it cannot prohibit state or federal government employees from entering areas that contain proprietary processes, it argues that even though they are authorized by the Administrator, private contractors stand in different shoes than government employees. Because private contractors are not government employees, they are not subject to criminal sanctions of the Trade Secrets Act, 18 U.S.C. § 1905, which prohibit unauthorized disclosure of trade secrets. The private contractor hired by EPA in this case causes Stauffer some concern because the company is part of the PEDCo group, which in some undetermined capacity may compete with Stauffer.

Clearly Congress envisioned the receipt of confidential proprietary information by persons other than officers or employees of EPA. *See* 42 U.S.C. § 7414(c). This Court has held that private parties authorized by the Administrator may enter under section 114. Thus, the issue becomes whether they should be prohibited from entering because of inadequate protection against disclosure.

■ This Court holds that EPA's contract with the PEDCo employees in this case[5] and EPA regulations, 40 C.F.R.

---

5. The substantive portions of the confidentiality agreements between PEDCo employees and PEDCo provide as follows:

PEI [PEDCo] possesses certain confidential information, so identified, relating to industrial processes and facilities (referred to below as "confidential information") which it has obtained in the past from its clients. PEI continues to obtain confidential information both directly from its clients and from third parties as a result of work done for its clients.

Employee may obtain confidential information from time to time as a result of visual inspection of records and facilities of PEI's clients or from third parties as a result of work done for PEI's clients.

NOW THEREFORE, in consideration of monies paid to employee by way of salary and other employee benefits, Employee agrees that, except as directed in the course of his employment, he will not disclose any confidential information to anyone, directly or indirectly. Employee further agrees to observe the general security procedures that

§ 2.301(h), are sufficient protection against disclosure. The contract imposes the duty of confidentiality and the penalty of dismissal and damages for breach of that duty. Under the regulations, the private contractor agrees that an "affected business [with] an interest in the information" is entitled to third-party beneficiary status under any confidentiality agreement and may enforce the agreement against any breaching employee. *Id.* § 2.301(h)(2)(ii)(c) (1980). If EPA were hiring direct competitors of the affected business to conduct the inspection monitoring, a court might be forced by equitable considerations to put a halt to the practice. It does not appear in this case, however, that PEDCo Environmental, Inc., was in direct competition with Stauffer. If an unauthorized use or disclosure is made, Stauffer can seek injunctive and damage relief against PEDCo and the employee. Likewise, in this Court's opinion an affected business should be able to hold EPA responsible if it can show that EPA could have reasonably foreseen a likelihood of unauthorized use or disclosure.

Stauffer suggests that the Agency has admitted by its own regulations and internal memoranda that authorized representatives means employees or officers. At the very least, Stauffer contends, EPA has not recognized that anyone other than EPA officers and employees can conduct *entries.* On the other hand, EPA says that Congress has ratified the Agency's consistent construction that allows for entry by private contractors by not changing section 114 when it was reviewed in 1977. For purposes of this decision, neither argument is conclusive.

Stauffer overstates its case when it cites 41 Fed.Reg. 36,923 (Sept. 1, 1976) (response to Comment 69) in support of its argument. The Administrator clearly rejected the Comment's statement that only officers and employees may be considered authorized representatives. Stauffer attempts to point out an agency-usage distinction between re-

ceiving confidential information and entry. The Agency has used private contractors for inspection and entry since 1973, however, and any clearer evidence that the. Agency construed authorized representative to include private contractors would be hard to find. Yet, this Court does not wholly accept the ratification argument because it does not appear that the issue of what authorized representative meant was reconsidered by Congress in 1977.

### Ex Parte Warrant Procedure

 Stauffer raises another issue in support of its motion to quash, that the use of ex parte warrants exceeds EPA's statutory authority. This argument is without merit. As noted earlier, Congress rejected the House version of the 1970 Clean Air Act Amendments, which would have required presentation of prior written notice in order to gain entry upon presentation of credentials. 42 U.S.C. § 7414(a)(2). *Compare* Legislative History of 1970 at 918, 923 *with id.* at 570. To accept Stauffer's argument on this issue would be to write into the statute the House requirement of prior written notice. This Court will not accomplish by judicial fiat what House members were not able to convince Congress to enact.

The use of ex parte warrants for administrative inspections was approved by the Supreme Court in *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). In this case, the ex parte warrant procedure strikes the correct balance between the public and private interests at stake: the affected business is protected from overly burdensome agency actions by having the warrant reviewed by an independent magistrate, and the public is protected by preserving EPA's enforcement power. If an affected business had the opportunity for an adversary hearing before an inspection could occur, it could temporarily shift its plant into compliance with Clean Air standards, only to return to pol-

PEI adopts and understands that any willful violation of the company's general security procedures will result in immediate dismissal

and liability for any damages arising therefrom.

luting after termination of the inspection. Such activity would undermine EPA's enforcement power. Congress did not intend to limit pollution only when notice of an agency inspection is received.

For all of these reasons, Stauffer's motion to quash is denied. Because Stauffer legitimately believed that private contractors were not authorized representatives under the Clean Air Act, EPA's motion for contempt is denied. If Stauffer's subsequently refuses entry to its Mt. Pleasant plant to authorized representatives of the Administrator presenting proper credentials and a warrant, a contempt citation shall issue.