In the Matter of Clean Air Act
Administrative Inspection of:

The BUNKER HILL COMPANY LEAD
AND ZINC SMELTER, Kellogg, Idaho,
and The Bunker Hill Company, a corpo-
ration, Plaintiff-Appellant,

v.

U. S. ENVIRONMENTAL PROTECTION
AGENCY and Irwin J. (Bud) Weisen-
berg, Defendants-Appellees.

No. 80-3446.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 7, 1981.

Decided Oct. 13, 1981.

William F. Boyd, Brown, Peacock, Keane & Boyd, Kellogg, Idaho, for plaintiff-appellant.

Judson W. Starr, Washington, D. C. (argued), for defendants-appellees; M. Karl Shurtliff, Boise, Idaho, on brief.

Before SNEED and BOOCHEVER, Circuit Judges, and ROTHSTEIN *, District Judge.

---

* Honorable Barbara J. Rothstein, United States District Judge for the Western District of Washington, sitting by designation.

SNEED, Circuit Judge:

The United States Environmental Protection Agency (EPA), pursuant to the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*, sought to inspect the Bunker Hill Company's Idaho plant. After one inspector was denied entry because he was not an EPA employee, the EPA obtained a warrant ordering Bunker Hill to permit the inspector to enter the plant and conduct the inspection. Bunker Hill refused to honor the warrant. On appeal Bunker Hill contends that the warrant should not have been issued *ex parte*, was overbroad, and should not have permitted a non-government employee to make the inspection. The district court rejected the argument that the warrant was invalid, but refused to hold Bunker Hill in contempt. We affirm.

I.

FACTUAL BACKGROUND

The Bunker Hill Company operates a lead and zinc smelter complex in Kellogg, Idaho. The EPA notified Bunker Hill that it would inspect the plant to determine whether the plant's emissions complied with the requirements of the Clean Air Act. An EPA employee and Weisenberg, an employee of an EPA contractor, Del Green Associates, were to conduct the inspection.

Prior to the inspection, Bunker Hill sent a letter to the EPA questioning EPA's authority to conduct an inspection using a non-EPA employee. Bunker Hill indicated, however, that it would allow the non-EPA employee to inspect the plant if he agreed to execute a hold harmless and secrecy agreement designed to protect its trade secrets and also agreed to abide by certain conditions. These conditions restricted, *inter alia*, the areas subject to inspection and the non-EPA employee's use of information obtained during the inspection and granted Bunker Hill the right to develop all photographs taken therein.

Without responding to Bunker Hill's letter, the EPA and Weisenberg attempted to conduct the inspection. The EPA refused to permit the hold harmless and secrecy agreement to be signed and Bunker Hill refused to allow Weisenberg to enter, although it would have allowed the EPA employee to enter the plant alone. No compromise could be reached despite a full day of negotiating. The plant was not inspected.

An inspection warrant was thereafter obtained by the EPA from a United States magistrate authorizing Weisenberg's entry into various parts of the plant. The warrant also required Bunker Hill to produce various records. The following day, the warrant was presented to Bunker Hill but again it refused to allow Weisenberg to enter the premises without executing the hold harmless and secrecy agreement. Again, no inspection was conducted.

Bunker Hill promptly filed a complaint in the district court seeking to quash the inspection warrant and to obtain declaratory relief. The EPA countered by arguing that Bunker Hill should be held in civil contempt for refusing to honor the inspection warrant. The district court held a hearing after which findings of fact and conclusions of law were filed. The court declined to hold Bunker Hill in contempt, but denied its motion to quash the warrant and for a temporary restraining order. The court concluded (1) that the EPA could use Weisenberg as an inspector because he qualified as an "authorized representative" of the EPA administrator, (2) that the EPA had the authority to obtain *ex parte* warrants, and (3) that the warrant was not impermissibly broad. It was the view of the district court that the EPA's regulations and its contract with Del Green Associates adequately protected Bunker Hill. Therefore, the inspection warrant was both proper and enforceable. Nevertheless, the district court stayed enforcement pending appeal. Bunker Hill appealed and this court granted EPA's motion to expedite.

We agree with the district court's findings and conclusions. Therefore, we affirm.

II.

THE MEANING OF "AUTHORIZED REPRESENTATIVE"

■ The primary issue in this case is whether an "authorized representative"

must be a full-time employee of the EPA within the meaning of section 114(a)(2) of the Clean Air Act, 42 U.S.C. § 7414(a)(2). This subsection of the Act provides that "the Administrator or his authorized representative" has a right of entry to property and access to equipment to ensure compliance with the requirements of the Act.

The Tenth Circuit, in a case very similar to this, recently held that employees of an independent contractor are not "authorized representatives" under section 114(a)(2). *Stauffer Chemical Co. v. EPA*, 647 F.2d 1075 (10th Cir. 1981). That court noted that its conclusion differed from that of the district court in this case. We find the Tenth Circuit's interpretation unpersuasive.

The Act does not define "authorized representative." The EPA insists, however, that the plain meaning of the words requires the conclusion that contractors such as Weisenberg be allowed to conduct inspections. It is not disputed that he was "authorized" by the Administrator and a "representative" is "one who represents another as agent, delegate, successor, or heir. . . ." 8 O.E.D. 482 (1970). The EPA's argument is persuasive. Weisenberg qualifies as an "authorized representative" under the plain meaning of the words. The legislative history does not compel a different conclusion.

The 1970 Conference Report to the Clean Air Act Amendments provides the strongest support available for the Tenth Circuit's position. It stated that the Act authorized inspection by "DHEW personnel." Conf. Rep.No.91–1783, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Ad. News 5356, 5374, 5380 (the Department of

Health, Education and Welfare administered the Act prior to the creation of the EPA). Seizing on this language the court in *Stauffer Chemical Co.* concluded that "an affirmative grant of authority to a described group precludes a grant of that same authority, by implication, to a different group." *Stauffer Chemical Co. v. EPA*, 647 F.2d at 1078.

■ This interpretation is unpersuasive. The Conference Committee was confronted with differing language in the Senate and House versions of the bill, with the Senate version granting broader inspection authority. Section 115 of the Senate bill, for example, broadened the basis upon which inspections could be made and deleted certain requirements imposed by the House. More particularly, section 116(a)(3) of the Senate bill granted inspection authority to "the Secretary or his authorized representatives," while section 112(f) of the House bill limited the right to enter and inspect to "officers or employees." The Conference Committee adopted the Senate version for inspections of stationary sources, section 114(a)(2), 42 U.S.C.A. § 7414(a)(2), and the House version for inspections of motor vehicle manufacturers, section 206(c), 42 U.S.C.A. § 7525(c). Hence, where Congress meant to limit inspections to officers and employees it did so. Congress must be deemed to have understood its choice of the phrase "authorized representative" in contrast to the limited phrase "officers and employees." [1]

■ Furthermore, the Tenth Circuit's reliance upon the Conference Report's state-

---

1. Moreover, section 114(c), which prohibits the disclosure of confidential information gathered in the course of inspections made pursuant to section 114(a)(2), authorizes the Administrator to make an exception and disclose the information to "other officers, employees, or authorized representatives of the United States concerned with carrying out this chapter . . ." Congress' use of the disjunctive makes clear that each phrase was intended to encompass a separate category of individuals. This court has previously recognized that "[a]s a general rule, the use of disjunctive in a statute indicates alternatives and requires that they be

treated separately." *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975). *See also Reiter v. Sonotone Corp.*, 442 U.S. 330, 338–39, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979). To adopt the interpretation urged by appellant and accepted by the Tenth Circuit would require this court to ignore the disjunctive and dismiss the independent significance it confers upon the phrase "authorized representatives." To maintain consistency within section 114 of the Act, the term "authorized representatives" used in section 114(a)(2) should be given the same meaning that Congress clearly intended in section 114(c).

ment that the Clean Air Act authorized inspection by "DHEW personnel" ignores important features of the Act. This Act was intended comprehensively to regulate, through guidelines and controls, the complexities of restraining and curtailing modern day air pollution. *See United States v. Stauffer Chemical Co.*, 511 F.Supp. 744 (M.D.Tenn.1981), *appeal docketed* No. 81–5311 (6th Cir. May 4, 1981). Congress would not have authorized the EPA to cooperate "with any air pollution control agency," 42 U.S.C. § 7403(a)(3), nor to "make grants to air pollution control agencies," *id.* 7403(b)(3), nor to "contract with public or private agencies," *id.* 7403(b)(4) and then preclude these same agencies from entering and conducting inspections. Since its creation in late 1970, the EPA has sought and received appropriations from Congress for the use of private contractors to provide technical support for stationary source inspections. Such appropriations indicate Congress' own tacit approval of the EPA's use of private contractors to assist in enforcement of the Act.

Any inclination to be guided, as was the Tenth Circuit, by a passing observation in the Conference Report, is checked when it is realized that the Conference Committee in 1970 lifted some sections from the House version of the bill, some from the Senate version, and simply rewrote others. This makes it unlikely that the Conference Report's language reflects a carefully considered statement of congressional intent. Moreover, the oft-repeated language in *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965), *viz.*, "When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration ..." is particularly compelling when reinforced by the plain meaning of the statute.[2]

We are unswayed by the language or history of section 308 of the Clean Water Act of 1972, 33 U.S.C. § 1318. Although the subject matter of both the Clean Air Act and the Clean Water Act are similar, the latter being modeled on the former, and the time between their enactments a mere two years, it would be most "difficult to attribute a construction to a statute by virtue of statements made after the statute was enacted." *United States v. Stauffer Chemical Co.*, 511 F.Supp. at 747.

■ Bunker Hill is primarily concerned with the possibility of dissemination of confidential business information and trade secrets obtained by non-EPA employees during the course of an inspection. These fears, we believe, are speculative and unwarranted. The EPA has provided its own sanction against improper disclosure of confidential information by employees or contractors. 40 C.F.R. § 2.211; 41 C.F.R. § 15–7.350. In the case of employees the administrative sanction for improper disclosure is "dismissal, suspension, fine or other adverse personnel action." In the case of private contractors the penalty is "debarment or suspension," not a light penalty in view of the fact that EPA contracts often involve millions of dollars. In addition, the EPA has specifically written certain safeguards into its contract with Del Green Associates to deal with the use of such information. If these be insufficient, perhaps the unauthorized use of such information would enable Bunker Hill to sue for not only injunctive relief but for damages as well. If additional safeguards are necessary, Congress must provide them.

We conclude that employees such as Weisenberg, are "authorized representatives" of the EPA for purposes of section 114(a)(2) of the Clean Air Act.

2. Furthermore, an administrative interpretation deserves particular deference where Congress fails to take advantage of an opportunity to alter it. *Saxbe v. Bustos*, 419 U.S. 65, 77–78, 95 S.Ct. 272, 280, 42 L.Ed.2d 231 (1974); *Norwegian Nitrogen Products Co. v. United States*, 288 U.S. 294, 313–15, 53 S.Ct. 350, 357–58, 77 L.Ed. 796 (1933). In the 1977 Amendments to the Clean Air Act Congress included an amendment to section 114 (not relevant to this discussion). While considering amendments to the section Congress made no effort to indicate any disagreement with EPA's construction of authorized representatives to include private contractors.

### III.

### EX PARTE WARRANT PROCEDURE

Bunker Hill's argument that the EPA lacks authority to obtain an inspection warrant is also without merit. The EPA has not claimed a right to conduct the type of warrantless inspection which is allowed in cases of "pervasively regulated" industries. *See Donovan v. Dewey*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981); *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); *Colonnade Catering Corp. v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970); *see generally* Note, *Rationalizing Administrative Searches*, 77 Mich.L.Rev. 1291 (1979). It relies on the power of entry granted by section 114(a)(2). That is sufficient authority to justify obtaining inspection warrants.

Bunker Hill's true complaint is not so much that the warrant was issued but that it was obtained *ex parte*. This court has recently affirmed the Secretary of Labor's ability to obtain *ex parte* warrants to conduct OSHA inspections. *Stoddard Lumber Co. v. Marshall*, 627 F.2d 984 (9th Cir. 1980). The court noted that the Supreme Court, in *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), had recognized that "surprise searches" might be required and concluded, "Such searches obviously would employ the *ex parte* warrant procedure." 627 F.2d at 990.

Bunker Hill contends that there was no need for surprise in this case and therefore the EPA should not have obtained its warrant *ex parte*. But in *Stoddard Lumber* we did not hold that warrants could be obtained *ex parte* only when there was a need for surprise. In fact, the *Stoddard Lumber* inspection was a "general schedule inspection" under OSHA rather that an "unscheduled inspection," which is conducted in response to reports of hazardous working conditions. *Id.* at 985–86. It is the latter type of inspection that would usually require surprise to be effective. As in this case, the inspector in *Stoddard Lumber* had already sought entry before obtaining the warrant.

There was no indication that surprise was necessary. *Stoddard Lumber* thus stands for the proposition that the agency may obtain its warrants *ex parte* even when surprise is not necessary.

AFFIRMED.