**BOLIDEN METECH, INC., Plaintiff,**

v.

**UNITED STATES of America, U.S. Environmental Protection Agency, Lee Thomas, Administrator, and Michael Deland, Administrator for Region I, Defendants.**

C.A. No. 88–0081 L.

United States District Court,
D. Rhode Island.

Sept. 20, 1988.

---

**78**

John G. Coffey, Jr., Charles J. Mc-Govern, James H. Falk, Bradford A. Penney, Providence, R.I., for plaintiff.

Lincoln Almond, U.S. Atty., and Everett Sammartino, Asst. U.S. Atty., Providence, R.I., Ruth McQuade, Atty., U.S. Dept. of Justice, Land & Natural Resources Div., Environmental Enforcement Section, Thomas R. Lotterman, Atty., Environmental Defense Section, Washington, D.C., George R. Ciampa, Asst. Regional Counsel, E.P.A., Boston, Mass., for defendants.

## OPINION AND ORDER

LAGUEUX, District Judge.

This matter is before the Court on defendants' motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted, and on the cross motions for summary judgment on Count I filed by both sides.

An administrative search pursuant to an *ex parte* warrant, conducted by the Environmental Protection Agency ("EPA"), of plaintiff's premises, under the Toxic Substances Control Act ("TSCA"), gave rise to this action for injunctive and declaratory relief. At issue is whether the EPA has authority to obtain a warrant from a federal judicial officer under TSCA, and whether this Court should exercise jurisdiction in a collateral action to suppress evidence while there is an ongoing administrative proceeding.

This Court holds that TSCA implicitly grants the EPA authority to seek administrative warrants in order to fulfill its inspection duties. In addition, the Court refuses to exercise jurisdiction on prudential grounds of the other issues raised in this case.

## FACTS

Plaintiff, Boliden Metech, Inc. ("Boliden"), operates a precious metals reclamation facility in Providence, Rhode Island. Workers at this facility shred scrap computer parts in order to salvage valuable component metals. The EPA is concerned that amounts of polychlorinated biphenyls ("PCBs") may be escaping from the Boliden facility into the ground and into the nearby Providence River.

On April 25, 1986, an employee of the Rhode Island Department of Environmental Management ("DEM") obtained samples of material from Boliden's Providence facility. The DEM search occurred without Boliden's consent. On July 27, 1987, the EPA issued an administrative complaint alleging that Boliden was violating the rules and regulations governing the storage and disposal of PCBs under the Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq.* An administrative proceeding, captioned *In the Matter of Boliden Metech,*

*Inc.*, TSCA–I–87–1097, is presently pending before an Administrative Law Judge ("ALJ"). The administrative proceeding is a civil action for assessment of a penalty pursuant to § 16(a) of TSCA, 15 U.S.C. § 2615(a).

On January 8, 1988, Boliden filed a motion in the administrative proceeding seeking to exclude evidence derived from the April 25, 1986 DEM inspection. Boliden argued that evidence obtained by the DEM in the absence of an administrative search warrant violated Boliden's fourth amendment rights and thus should be excluded from the proceeding.

Subsequently, on January 28, 1988, the EPA made an *ex parte* application before a magistrate in the United States District Court for the District of Rhode Island seeking an administrative warrant to enter and inspect the Boliden facility pursuant to TSCA § 11, 15 U.S.C. § 2610. Previously, EPA agents had sought entry to examine the premises. Boliden employees refused to allow the EPA agents to conduct certain sampling tests. Consequently, the agents left and sought an inspection warrant from the Magistrate. The warrant was issued and subsequently executed by agents of the EPA on January 29, 1988.

On February 5, 1988, Boliden instituted the present action. In its amended complaint, Boliden sought a temporary restraining order, a preliminary injunction, a permanent injunction, and certain declaratory relief. The thrust of Boliden's action is to have the searches conducted by both the DEM and the EPA declared illegal and to have the Court direct the EPA to return all materials obtained during these inspections. Furthermore, Boliden seeks a declaration that the EPA lacks statutory authority to obtain administrative warrants under TSCA, and an injunction prohibiting the EPA from exercising warrant authority under TSCA in the future.

Specifically, Boliden filed a three count amended complaint. In Count I, Boliden claims that the EPA violated TSCA by obtaining an *ex parte* warrant. Boliden alleges that it is "under the continuing threat of EPA penalties any time the EPA seeks and obtains a warrant with respect to any Boliden facilities." Boliden's Amended Complaint at p. 6. In Count II, Boliden alleges that the EPA violated its fourth amendment rights by conducting an illegal search and seizure and by obtaining and executing an *ex parte* warrant based upon a previous illegal search. Finally, in Count III, Boliden alleges that the *ex parte* warrant of January 28, 1988 was flawed because the EPA did not inform the Magistrate of the pending administrative proceeding against Boliden, and Boliden's pending motion to suppress in that action.

This Court denied Boliden's motion for a temporary restraining order on February 9, 1988. Then on February 23, 1988, this Court denied Boliden's application for a preliminary injunction, but ordered that any future EPA warrant applications concerning Boliden would have to be made directly to this Court and not to the Magistrate.

On March 9, 1988, the EPA made an application for an inspection warrant. This Court heard both parties in chambers. After determining that Boliden would not consent to an inspection, the Court issued a warrant allowing the EPA to enter and inspect Boliden's Providence facility.

Even before the hearing on preliminary injunction, the EPA filed a motion to dismiss Boliden's complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) respectively. Boliden then filed a motion for summary judgment on Count I pursuant to Rule 56 of the Federal Rules of Civil Procedure. Not to be outdone, defendants followed suit with their own cross motion for summary judgment on Count I. On June 21, 1988, this Court heard oral argument on all these motions and took the case under advisement. The matter is now in order for decision.

## TSCA PERMITS THE EPA TO OBTAIN *EX PARTE* ADMINISTRATIVE SEARCH WARRANTS

TSCA implicitly authorizes the EPA to obtain search warrants for the purpose of fulfilling its inspection duties under the

Act. The ability to obtain search warrants furthers the policy of TSCA and follows from its language. Moreover, courts addressing the warrant authority issue under similar statutes have held that the statutes enable federal administrative agencies to seek *ex parte* warrants. Therefore, Boliden's motion for summary judgment as to Count I must be denied and defendants' cross motion for summary judgment on Count I must be granted.

### A. *Warrant Authority*

Under the "inspections and subpoenas" section of TSCA, representatives of the EPA "may inspect any establishment, facility, or other premises in which chemical substances or mixtures are manufactured, processed, stored, or held before or after their distribution." 15 U.S.C. § 2610. § 2610 further provides that an inspection may be made "upon the presentation of appropriate credentials and of a written notice to the owner...." *Id.* While this inspection section does not dictate what steps the EPA is to take to gain entry to a facility if access is denied, it seems logical to believe that Congress intended to authorize the EPA to take reasonable steps, such as obtaining a warrant, to fulfill its inspection obligation.[1] Obtaining an inspection warrant is in keeping with the Congressional policy underlying TSCA which seeks to provide adequate authority to regulate hazardous chemicals.[2] In short, by granting the EPA the authority to enter and inspect under 15 U.S.C. § 2610, Congress implicitly gave that body the power to use reasonable means, such as an administrative search warrant, to carry out the inspections.

Where, as here, Congress has given the EPA the right of entry, it would frustrate the will of Congress to deny the EPA the ability to obtain a warrant to compel entry, if the targetted owner refuses to consent. In *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), the Supreme Court held that "administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure." *Id.* at 545, 87 S.Ct. at 1740. Thus, a statute which authorizes nonconsensual, warrantless entry would be unconstitutional. Since Congress promulgated TSCA ten years after the Supreme Court's decision in *See*, it is reasonable to assume that in granting "administrative entry," Congress necessarily granted the EPA the ability to compel access "through prosecution or physical force within the framework of a warrant procedure."

Boliden argues that 15 U.S.C. §§ 2614 and 2616 provide an exclusive remedy when entry is refused under § 2610 of Title 15. These sections provide in relevant part as follows:

> It shall be unlawful for any person to—
>
> (4) fail or refuse to permit entry or inspection as required by § 2610 of this title.

15 U.S.C. § 2614.

> (a) Specific enforcement.—(1) The district courts of the United States shall have jurisdiction over civil actions to—
> (A) restrain any violation of § 2614 of this title, ...

15 U.S.C. § 2616.

This Court does not find that §§ 2614 and 2616 of Title 15 were intended by Congress to provide an exclusive remedy for failure to permit entry under § 2610 of the Title, and thus to prevent the issuance of administrative warrants. This ruling is supported by a 1982 district court decision under analogous provisions of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6927 and § 6934. *In Re Order Pursuant to Section 3013(d) RCRA*, 550 F.Supp. 1361 (W.D.Wash.1982).

---

1. 15 U.S.C. § 2601(c): "... It is the intent of Congress that the Administrator shall carry out this chapter in a reasonable and prudent manner...." Obtaining a search warrant from an impartial magistrate once entry has been refused would seem to be a reasonable and prudent means of carrying out TSCA.

2. 15 U.S.C. § 2601(b) Policy.—It is the policy of the United States that—
   (2) adequate authority should exist to regulate chemical substances and mixtures which present an unreasonable risk of injury....

Faced with a challenge to the EPA's authority to seek an inspection warrant, the court held that portions of the RCRA permitting filing of enforcement actions "do not preclude the [EPA] from using the customary remedy of an *ex parte* administrative inspection warrant." *Id.* at 1364.

Furthermore, the legislative history concerning TSCA demonstrates that Congress did not intend to limit available enforcement and investigatory techniques to those explicitly listed in the statute. For example, while § 2610 concerning inspections does not mention that photocopying of documents or photographing of premises may be used by the EPA during the course of an inspection, the Conference Report concerning TSCA states that such techniques and others not specified may be employed during an inspection for toxic substances. Toxic Substances Control Act, Conf.Rep.S. 3149, 94th Cong., 2d Session, *reprinted in* 1976 U.S.Code Cong. and Admin.News 4491, 4572–73.

Boliden argues that in order for the EPA to obtain an inspection warrant, Congress must explicitly state that the EPA has this authority under TSCA. That contention is without merit. The United States Supreme Court recently held:

> When Congress invests an agency with enforcement and investigatory authority, it is not necessary to identify explicitly each and every technique that may be used in the course of executing the statutory mission.... Regulatory or enforcement authority generally carries with it all modes of inquiry and investigation traditionally employed or useful to execute the authority granted.

*Dow Chemical Co. v. United States*, 476 U.S. 227, 106 S.Ct. 1819, 1824, 90 L.Ed.2d 226 (1986). The use of inspection warrants fits neatly within the category of modes of investigation traditionally employed to execute the authority to enter private premises. Therefore, the *Dow Chemical* decision indicates clearly that the EPA necessarily must have authority to seek warrants under TSCA. *Cf. Marshall v. Barlow's, Inc.*, 436 U.S. 307, 317 n. 12, 98 S.Ct. 1816, 1823 n. 12, 56 L.Ed.2d 305 (1978) (OSHA § 8(a),

29 U.S.C. § 657(a), grants the Secretary broad power to determine how warrants are to be used in performing inspections.)

In *Dow Chemical* the EPA conducted an aerial surveillance of Dow's chemical facility pursuant to § 114(a)(2) of the Clean Air Act, 42 U.S.C. § 7414(a)(2)(A), which provides that "upon presentation of ... credentials," the EPA has a "right of entry to, upon, or through, any premises." Dow argued that this section provided only a limited grant of authority to enter and did not authorize aerial observation. 106 S.Ct. at 1824. Furthermore Dow claimed that the aerial surveillance constituted a warrantless search in violation of the fourth amendment. *Id.*

The Supreme Court upheld the EPA's actions. In response to Dow's assertion that § 114(a) of the Clean Air Act restricts the EPA to use only those investigative techniques spelled out in that section, the Court held:

> Section 114(a) ... appears to expand, not restrict, EPA's general powers to investigate. Nor is there any suggestion in the statute that the powers conferred by this section are intended to be exclusive.

*Id.* The present case is analogous to *Dow Chemical* in that Boliden is claiming that the EPA may not employ an investigative technique that is not specifically authorized by the "inspections" section of a regulatory statute. In fact, the inspection and entry provisions of TSCA and the Clean Air Act are quite similar. Following the reasoning of the Supreme Court in *Dow Chemical*, this Court holds that 15 U.S.C. § 2610 does not prohibit the EPA from seeking search warrants.

In their opinions, both the *Dow Chemical* majority and dissenters mention the possibility of obtaining administrative search warrants under the Clean Air Act, and simply assume that such a procedure is available to the EPA in exercising its inspection powers. At the outset of its opinion, the majority describes the facts surrounding the *Dow Chemical* case. The Court observes that the EPA conducted one inspection and then sought to conduct another on-site inspection. The Court then

states that a request for a second EPA inspection was denied and "EPA did not thereafter seek an administrative search warrant." 106 S.Ct. at 1822. Clearly, the majority believed that the EPA had the authority to seek a search warrant.

Four justices filed a dissent to the *Dow Chemical* decision on the grounds that the aerial surveillance violated the fourth amendment. In the dissenting opinion, they maintain that "EPA should have sought a warrant from a neutral judicial officer," before conducting the surveillance. 106 S.Ct. at 1834 (dissenting opinion). Thus the dissenters had no doubt that the EPA had the authority to seek an administrative warrant despite the absence of explicit language to that effect in the Clean Air Act.

Several courts have explicitly affirmed that where Congress has granted an administrative agency the power to enter and make inspections, the agency has the authority to seek a warrant. *Bunker Hill Co. Lead and Zinc Smelter v. EPA*, 658 F.2d 1280, 1285 (9th Cir.1981) ("[The EPA] relies on the power of entry granted by section 114(a)(2) [of the Clean Air Act, 42 U.S.C. § 7414 (a)(2) ]. That is sufficient authority to justify obtaining inspection warrants."); *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1222 (D.C.Cir. 1981), *cert. denied*, 455 U.S. 940, 102 S.Ct. 1432, 71 L.Ed.2d 651 (1982) (Although the statute does not explicitly authorize search warrants, the court upheld an INS search pursuant to a warrant obtained under the Immigration and Nationality Act, 8 U.S.C. § 1251 *et seq.*); *Midwest Growers Coop., Corp. v. Kirkemo*, 533 F.2d 455, 462 (9th Cir.1976) ("... non consensual administrative searches may be accomplished through warrants of inspection when the administrative agency is granted by Congress the power of entry to make its inspections."); *Matter of Alameda County Assessors Parcel Nos. 537–801–2–4 and 537–850–9*, 672 F.Supp. 1278, 1287 (N.D.Cal.1987) (The EPA has authority to seek an administrative search warrant under Section 308 of the Clean Water Act, 33 U.S.C. Section 1318, which provides a "right of entry."); *In Re Order Pursuant to § 3013(d) RCRA, supra* (EPA warrant seeking to

examine a hazardous waste recycling facility upheld under the Resource Conservation and Recovery Act, 42 U.S.C. § 6927.). Other courts have presumed, without expressly stating, that the power to enter brings with it the power to seek an administrative search warrant. *In Re Stanley Plating Co., Inc.*, 637 F.Supp. 71 (D.Conn.1986) (*ex parte* warrant for inspection pursuant to Resource Conservation and Recovery Act, 42 U.S.C. § 6927(a)); *Matter of 949 Erie Street, Racine, Wis.*, 645 F.Supp. 55 (E.D. Wis.1986), *appeal dismissed*, 824 F.2d 538 (7th Cir.1987); *United States v. Stauffer Chem. Co.*, 511 F.Supp. 744 (M.D.Tenn. 1981) *rev'd on other grounds*, 684 F.2d 1174 (6th Cir.1982), *aff'd* 464 U.S. 165, 104 S.Ct. 575, 78 L.Ed.2d 388 (1984).

### B. *Ex Parte Warrant*

■ Boliden maintains that an *ex parte* warrant is improper under TSCA because it denies Boliden the opportunity to be heard on whether there are grounds to issue the warrant. Boliden contends that its involvement prior to the issuance of an inspection warrant is necessary not only to protect its privacy interests, but also to give it the opportunity to influence the types of investigative procedures that will be authorized for use by the EPA. Since the Supreme Court has affirmed the right of an administrative agency to obtain an *ex parte* warrant in a similar situation, the Court is not persuaded by Boliden's arguments. *Marshall v. Barlow's, Inc.*, 436 U.S. at 316–20, 98 S.Ct. at 1822–24.

In the first place, requiring the EPA to engage in an adversary proceeding in order to gain access to toxic substance facilities after entry has been denied by the facility's owner would deny the EPA the element of surprise. The advance warning of an inspection would allow the owner to correct any transgressions of TSCA before the EPA could detect them, and then return to business as usual after the inspection is complete. Moreover, a business subject to an EPA search has the opportunity to challenge the grounds underlying the search warrant at any subsequent administrative proceeding, which is in turn subject to judicial review before a United States Court of

Appeals. *In the Matter of Worksite Inspection of S.D. Warren*, 481 F.Supp. 491, 495 (D.Me.1979). Finally, requiring an adversary proceeding to determine which types of inspection techniques are permissible under TSCA would force a magistrate to make determinations outside his field of expertise, and compel the judiciary to trespass in that sphere of power traditionally left to the other branches of government.

The *ex parte* warrant procedure adequately protects the privacy interests of private entities. Moreover, it does not frustrate the public purpose underlying TSCA as would the delay engendered by a pre-inspection, full-blown adversarial proceeding. This Court subscribes to the following:

> [T]he ex parte warrant procedure strikes the correct balance between the public and private interests at stake: the affected business is protected from overly burdensome agency actions by having the warrant reviewed by an independent magistrate, and the public is protected by preserving EPA's enforcement power. If an affected business had the opportunity for an adversary hearing before an inspection could occur, it could temporarily shift its plant into compliance ..., only to return to polluting after termination of the inspection. Such activity would undermine EPA's enforcement power.

*United States v. Stauffer Chemical Co.*, 511 F.Supp. at 749–50. *See also, See v. City of Seattle*, 387 U.S. at 545, n. 6, 87 S.Ct. at 1740, n. 6; *S.D. Warren, supra.*

Boliden argues that a pre-search adversary proceeding is necessary so that the Court can determine what types of investigative techniques are justified. However, the judiciary is without expertise as to what scientific techniques are best suited for detecting PCBs in various types of chemical facilities. It is beyond the province of the courts to direct the EPA in the proper manner of conducting its day to day operations. Instead, it is sufficient for an impartial magistrate, when issuing an *ex parte* administrative search warrant, to specify that only "reasonable" inspection methods may be employed in the course of an investigation pursuant to a warrant.

Should the EPA act unreasonably or in bad faith in performing its functions under the warrant, the target of the search has the opportunity to raise such transgressions in the course of any subsequent administrative proceeding and before a United States Court of Appeals. Thus a target company's privacy interests are adequately protected without forcing a district court to do violence to the separation of powers doctrine by unnecessarily enmeshing itself in the nuts and bolts operation of an administrative agency.

## JURISDICTION

■ The issue of whether or not a district court has jurisdiction over claims such as the ones raised in Counts II and III of the Amended Complaint presents a close question of law. *In Re Work Site Inspection of Quality Products*, 592 F.2d 611 (1st Cir.1979). *See generally Weyerhaeuser Co. v. Marshall*, 592 F.2d 373 (7th Cir.1979); *Blocksom & Co. v. Marshall*, 582 F.2d 1122 (7th Cir.1978); *Industrial Park Development Co. v. EPA*, 604 F.Supp. 1136, 1140–41 (E.D.Penn.1985). *Cf. Dickerson v. Administrator, EPA*, 834 F.2d 974 (11th Cir.1987); *San Juan Legal Serv. Inc. v. Legal Serv. Corp.*, 655 F.2d 434 (1st Cir.1981). It is a question, however, that this Court does not have to reach. The Court of Appeals for the First Circuit has held that in situations akin to the present case, even if jurisdiction does exist, a district court should decline to exercise jurisdiction on equitable grounds. *In Re Work Site Inspection of Quality Products*, 592 F.2d 611 (1st Cir.1979); *Baldwin Metals Co., Inc. v. Donovan*, 642 F.2d 768 (5th. Cir.1981), *cert. denied in Mosher Steel Co. v. Donovan*, 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981); *See also Blocksom & Co. v. Marshall*, 582 F.2d 1122 (7th Cir.1978).

The First Circuit decision in *Quality Products* is controlling in the present case. *Quality Products* involved a manufacturer's challenge to an administrative search warrant. Officials of the Occupational Safety and Health Administration ("OSHA") obtained a warrant to inspect the manufacturer's premises. OSHA officials executed the warrant and instituted

an administrative proceeding against the manufacturer. While this proceeding was pending, the manufacturer filed a motion to "stay and recall" the inspection warrant. The manufacturer filed its "stay and recall" motion with the magistrate who had issued OSHA's search warrant. Thereafter, the district court reviewed the propriety of the magistrate's actions and went on to consider the motion on its merits. The district court treated the manufacturer's motion as a motion to suppress and denied it on the merits. *Id.* at 613.

On appeal, the Court of Appeals for the First Circuit held that the district court should not have exercised jurisdiction over the action. First, the Court of Appeals held that the manufacturer's motion was "correctly characterized as in the nature of a motion to suppress." *Id.* Next, the Court formulated the issue in *Quality Products* as follows:

> This question can be separated into two parts. The first is whether a district court has "jurisdiction" to decide such a suppression motion. The second is to what extent, assuming jurisdiction, a district court should on equitable grounds decline to rule on such a motion, permitting it to be reviewed instead in the ongoing OSHA enforcement proceeding.

*Id.* at 614. In its opinion, the Court of Appeals refused to make a "definitive ruling on jurisdiction." *Id.* at 615. Instead the Court stated;

> [Jurisdiction] should in no event be exercised unless the movant clearly demonstrates that his constitutional rights cannot be adequately adjudicated in the pending or anticipated enforcement proceeding against him. ... [T]he challenges to the warrant can be adequately considered in the statutory enforcement proceedings if not by the Commission then by the court of appeals.

*Id.* (footnotes omitted)

Although *Quality Products* involved a "motion to stay and reconsider" and *Boliden* involves an action seeking a declaratory judgment and injunctive relief, this procedural difference does not alter the outcome. The Court of Appeals for the First Circuit specifically addressed the declaratory judgment issue as follows.

> The challenge to a warrant might be made not only in the form of a motion, but through a complaint commencing an independent action ... seeking a declaratory judgment invalidating the warrant and an injunction prohibiting OSHA's use of the inspection's fruits. While there might arguably be jurisdiction over such an action ... we think that any such jurisdictional basis would be subject to the same equitable constraints [discussed in this opinion].

*Id.* at 615 n. 5. Therefore, *Quality Products* clearly is controlling in the pending case.

The First Circuit went on to hold that the only forseeable circumstance in which a district court should review the validity of an inspection warrant is where the veracity of the warrant application itself is challenged and "effective consideration of the fourth amendment claim would require an evidentiary hearing." *Id.* at 617. Obviously, Boliden's claim does not fall within this generalized exception. In conclusion, the Court of Appeals held:

> Because [the manufacturer] has an adequate opportunity to litigate its challenges to the warrant in the procedure established by Congress, we hold that even if the district court had subject matter jurisdiction to decide [the manufacturer's] motion, it should, in equity, have refrained from doing so in these circumstances.

*Id.* at 616.

*Quality Products*, therefore, dictates that Counts II and III of Boliden's Amended Complaint be dismissed. As in *Quality Products*, an administrative proceeding is presently pending concerning Boliden's compliance with a regulatory law. In that proceeding, Boliden will have an adequate opportunity to have its suppression arguments heard. In addition, TSCA protects Boliden's fourth amendment rights by providing for judicial review of administrative proceedings in an appropriate United States Court of Appeals. 15 U.S.C. § 2615. Therefore, Boliden will have an adequate opportunity to litigate its suppression claims and it is unnecessary for this Court to collaterally interfere with the pending administrative proceeding.

For the foregoing reason, this Court holds that it should not exercise jurisdiction over the claims raised by Counts II and III of the Amended Complaint.

CONCLUSION

This Court holds that TSCA implicitly grants the EPA statutory authority to seek *ex parte* warrants. Therefore, defendants' motion for summary judgment on Count I is granted and Boliden's motion for summary judgment on said Count is denied. This Court determines that Counts II and III are in the nature of motions to suppress evidence in a pending administrative proceeding and, therefore, refuses to exercise jurisdiction on prudential grounds. Boliden's claims are more properly raised in the pending administrative proceeding with its appellate review procedure, and not in this collateral proceeding. Therefore, defendants' motion to dismiss Counts II and III is granted. The Clerk shall enter judgment for the defendants forthwith.

*It is so Ordered.*