UNITED STATES of America,
Plaintiff,

v.

Scott Michael NEERING and Tara
Ashely Neering, Defendants.

No. 01–CR–20043–BC.

United States District Court,
E.D. Michigan,
Northern Division.

Mar. 28, 2002.

ment of non-lawyer magistrates to issue search warrants is unconstitutional. The defendants also argue that the deputy magistrate did not have the authority to issue search warrants because she was never properly appointed according to state statute. The Court conducted an evidentiary hearing on February 25, 2002, at which another state district court magistrate and the search warrant affiant testified. The Court concludes the deputy magistrate in this case was competent to determine probable cause issues, but that she was not authorized as a judicial officer to issue search warrants because her appointment was not in accordance with the procedures prescribed by state law. The search warrant relied upon by the Michigan state police officers to justify the search was therefore void *ab initio*, and the seized evidence must be suppressed.

I.

Defendant Scott Michael Neering owns a private residence at 1343 Spartan Road in Tawas City, Michigan where he lives with his wife, defendant Tara Ashely Neering. Tawas City is located within Iosco County, which along with Arenac County comprise Michigan's eighty-first judicial district, which is a district of the first class. Mich. Comp. Laws § 600.8146.

On September 21, 2001, Detective Sergeant Robert Hahn of the Michigan State Police, working with the Huron Undercover Narcotics Team, drafted a proposed search warrant and supporting affidavit which he submitted to Iosco County Prosecuting Attorney Gary W. Rapp for review. The warrant would have authorized a search of the Neering residence to look for and seize marijuana and marijuana paraphernalia. Rapp suggested several changes, so Hahn revised the search warrant and again submitted it to Rapp for his review. After examining the revised war-

James A. Brisbois, Sr., Schmid & Brisbois, Saginaw, MI, James A. Brisbois, Jr., Saginaw, MI, for defendant.

## OPINION AND ORDER GRANTING DEFENDANTS' AMENDED MOTION TO SUPPRESS EVIDENCE

LAWSON, District Judge.

The defendants, husband and wife, are charged in a three-count indictment with manufacturing and possession with intent to distribute various quantities of marijuana. They have filed an amended motion to suppress certain evidence seized from their residence on September 22, 2001 pursuant to a search warrant signed by a state court deputy magistrate. The defendants contend that the deputy magistrate, a non-lawyer, did not have training sufficient to permit her competently to make probable cause determinations, and that the state statute permitting the appoint-

rant, Rapp told Hahn that he would approve the request and would walk a copy of the search warrant papers down to the Iosco County magistrates' office.

Hahn then telephoned Eighty-first District Court Magistrate and Court Administrator Jennifer Huebel to arrange a time to formally present the warrant that day. Huebel informed Hahn that she would be unavailable that afternoon, but that she could review the warrant that same evening at her residence. Hahn balked at the suggestion to meet after court hours because he did not want his employer to incur the cost of his overtime wages. Huebel responded with a suggestion that Hahn instead present the warrant to one of the court's "deputy" magistrates. At the hearing, Huebel explained that "deputy" magistrate is primarily an intra-office designation that does not affect the ability of deputy magistrates to issue search warrants. The only important limitation upon so-called "deputy" magistrates is that, unlike the magistrate, they are not permitted to hear traffic matters.

Later that same afternoon, Hahn presented the search warrant to Deputy Magistrate Laura Kruse who reviewed and signed it. The search warrant was executed the next day, and an undisclosed quantity of marijuana and other incriminating evidence was seized.

Iosco County has three magistrates, including Deputy Magistrate Kruse. Laura Kruse was hired as an Eighty-first District Court deputy clerk on December 18, 2000. She was then appointed to the Deputy Magistrate position by Allen C. Yenior, Chief Judge of the Eighty-first District Court, on May 23, 2001, effective June 20, 2001.

The applicable Michigan statute, Mich. Comp. Laws § 600.8501, provides that "[a]ll magistrates provided for shall be appointed by the judges of the district and the appointments shall be subject to approval by the county board of commissioners before a person assumes the duties of the office of magistrate." At the hearing, Jennifer Huebel explained that the practice in Iosco County has been to train an individual for approximately six months as a deputy clerk, after which the clerk is then appointed to the magistrate position. However, the parties agree that Laura Kruse's appointment to the position of magistrate was never specifically ratified by the Iosco County Board of Commissioners. Instead, the Chief Judge Yenior appointed Kruse to the position pursuant to what he perceived to be his authority to appoint any and all magistrates necessary to the business of the district court. The Order appointing Kruse states:

It is ordered:

This administrative order is issued in accordance with M.C.L. § 600.8501; MSA 27A.8501 and M.C.L. § 600.8503; MSA 27A.8503. The purpose of this order is to appoint a non-attorney magistrate to perform specified duties upon approval by the State Court Administrative Office.

1. The Judge of the 81st District Court appoints Laura Kruse as magistrate with the approval of the Iosco County Board of Commissioners.

2. Laura Kruse:

   A. Is registered as an elector in the district

   B. Will serve at the pleasure of the Judge of the District Court

   C. Will take a constitutional oath of office.

   D. Will file a performance bond in the amount of $20,000 with the Iosco County Treasurer and Chief Judge.

3. Magistrate Laura Kruse is authorized to perform the following duties:

   .        .        .        .        .

1. Issue search warrants under general authorization.

.    .    .    .    .

Admin. Order 2001–4, 81st District Court.

Huebel testified that her own appointment as magistrate had been formally approved by the Iosco County Board of Commissioners, and that Kruse was the first magistrate she knew of who had not been specifically confirmed by the county board. She noted, however, that the other deputy magistrates confirmed by the Board during her tenure only came before the Board because their appointments required additional funding.

In a submitted affidavit, Judge Yenior states that this informal method of appointment has been the prevailing practice in Iosco County throughout his tenure on the bench and, upon information and belief, also preceded his tenure. A "to whom it may concern" letter from the chairman of the Iosco County Board of Commissioners, Larry Erickson, submitted on official Eighty-first District Court stationary, confirmed that "it has been past practice that the Iosco County Board of Commissioners has granted the presiding district court judge blanket authority to appoint a magistrate at his/her pleasure," provided that the hiring of said magistrate would not exceed current budgetary limits. Erickson indicated in his statement, and Huebel testified, that specific Board approval is required for magistrate appointments that require additional funding. The government has not produced any formal resolution or other indication of any action by the Iosco County Board establishing this "blanket" approval authority.

Deputy Magistrate Kruse is not an attorney and had no legal training before she was hired as a deputy clerk/magistrate. She has a master's degree in history and spent thirteen years as a corrections officer for the Iosco County Sheriff's Department before being hired by the dis-

trict court in December 2000. Her training as magistrate was largely on-the-job, watching Magistrate Huebel handle various matters including the issuance of search warrants. Huebel testified that she provided Kruse with manuals discussing probable cause published by the Michigan Judicial Institute and the Prosecuting Attorneys Association of Michigan, but that Kruse, unlike Huebel, has not attended any of the training seminars held by the Institute.

Sergeant Hahn testified that he was unaware of any irregularities surrounding the appointment of Kruse to the position of Deputy Magistrate. Although Hahn recognized that district court judges could also issue warrants, he explained that in his twelve years of experience with the Michigan State Police, approximately ninety-eight percent of the warrants he has overseen have been presented to and signed by magistrates. As a result, when Hahn learned that Huebel was not available during his regular shift, but learned that other magistrates would be available, he did not inquire as to the availability of a district judge to review the warrant.

The defendants in this case do not challenge the sufficiency of the search warrant affidavit or the probable cause determination. Rather, they contest the competence and authority of the deputy magistrate to issue the warrant.

## II.

### A.

■ The defendants first argue that Deputy Magistrate Laura Kruse did not have the legal training that would allow her to evaluate the complex issues relating to privacy and the assessment of probable cause required by the Fourth Amendment. They posit that only those with formal legal training are equipped make those

assessments, and that the Michigan statute that grants "untrained" persons the authority to issue search warrants violates the Constitution. The government counters that the Constitution neither contains nor implies any such requirement, noting that "[p]robable cause is, after all, a 'commonsense, nontechnical [concept]' that [deals] with the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." Gov't Resp. Br. at 5 (citing *Ornelas v. United States*, 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

Both parties cite *Shadwick v. City of Tampa*, 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972), in support of their respective positions. In that case, the defendant challenged an arrest warrant issued by a Tampa, Florida municipal court clerk for violating an ordinance prohibiting "impaired driving." *Id.* at 346, 92 S.Ct. 2119. The clerk's role at issue in the case was to issue arrest warrants solely when he believed probable cause existed to suspect a violation of a municipal ordinance. He was not permitted to issue search warrants, sit as a judge, or issue warrants for the arrest of persons violating state laws. *Id.* at 346–47, 92 S.Ct. 2119. The defendant claimed that municipal clerks were not qualified to issue warrants under the Fourth Amendment as "neutral and detached magistrates" in the absence of proper legal training.

The Court rejected this claim. First, the Court noted that the defendant's argument had no basis in past jurisprudence. The term "magistrate" had often been used interchangeably with "judicial officer" in the Court's Fourth Amendment cases, and it is widely acknowledged that until 1968, when the Federal Magistrates Act of 1968, 82 Stat. 1107, was passed, United States Commissioners, who issued federal search and arrest warrants, were not even

required to be lawyers themselves. *Id.* at 349 n. 8, 92 S.Ct. 2119. Second, the Court found that the defendant was unduly focused on the word "magistrate," when in fact the Fourth Amendment's concern was the broader requirement of a "neutral and detached magistrate," a provision that is satisfied by the issuance of a warrant by any individual outside of the executive branch who is not involved with law enforcement. *Id.* at 350–51, 92 S.Ct. 2119. Third, the Court held that there was no reason to believe that any sensible individual would be incapable of determining likely violations of municipal offenses such as "impaired driving, breach of peace, drunkenness, trespass, or the multiple other common offenses covered by a municipal code." *Id.* at 351, 92 S.Ct. 2119. Given the fairly routine probable cause determinations made by ordinary citizens sitting on grand juries, the duties of the Tampa municipal clerk were well within permissible bounds.

The defendants in this case argue that the probable cause determination required for search warrants is markedly more complex than the decision to issue arrest warrants for the trivial violations of Tampa's municipal ordinances. Furthermore, say the defendants, *Shadwick* was decided before *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), effectively insulated many probable cause determinations from meaningful judicial review.

It is true that on its face, *Shadwick* does not address the thornier problem of search warrants, especially ones issued in felony cases when substantial loss of liberty is at stake. Nor does any published opinion of the Sixth Circuit squarely address the issue of magistrate qualifications in the context of search warrants. The Supreme Court, however, does not appear to recognize any distinction. In one oft-cited pas-

sage, for example, the Court noted that "search and arrest warrants long have been issued by persons who are neither lawyers nor judges, and who certainly do not remain abreast of each judicial refinement of the nature of 'probable cause.'" *Illinois v. Gates,* 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (totality-of-circumstances test should be used for evaluating the reliability of informant tips).

There is no constitutional requirement that magistrates have formal legal training. Rather, the Fourth Amendment requires only that the magistrate be a judicial officer who is "neutral and detached," and capable of determining probable cause. *Shadwick,* 407 U.S. at 350–51, 92 S.Ct. 2119. The defendants do not challenge Deputy Magistrate Kruse's neutrality or suggest that she was somehow aligned with law enforcement. This Court has no difficulty concluding that a person who has earned a graduate degree and "apprenticed" for several months with an experienced district court magistrate possessed the capability to decide whether probable cause exists to believe that contraband or criminal evidence will be located at a designated location. The Michigan procedure which permits non-lawyers to serve as magistrates and issue process recognized by the Fourth Amendment is not repugnant to the Constitution.

### B.

██ The same Michigan statute prescribes the manner in which district court magistrates may be appointed. The statute contemplates that, with the exception of the thirty-sixth judicial district (which encompasses only the City of Detroit), magistrates are appointed by district court judges subject to the approval of the legislative body which governs the governmental unit in which the district court sits. The statute states:

(1) In a county which elects by itself fewer than 2 district judges, the county board of commissioners shall provide for 1 district court magistrate. In all other counties in districts of the first and second class, the county board of commissioners shall provide for at least 1 magistrate when recommended by the judges of the district. Additional magistrates may be provided by the board upon recommendation of the judges. All magistrates provided for shall be appointed by the judges of the district and the appointments shall be subject to approval by the county board of commissioners before a person assumes the duties of the office of magistrate.

(2) In each district of the third class, the judge or judges of the district may appoint 1 or more district court magistrates. A person shall not be appointed magistrate unless the person is a registered elector in the district for which the person was appointed. Before a person assumes the duties of the office of magistrate in a district of the third class, the appointment of that person as a district court magistrate shall be subject to approval by the governing body or bodies of the district control unit or units which, individually or in the aggregate, contain more than 50% of the population of the district. This subsection shall not apply to the thirty-sixth district.

(3) The thirty-sixth district shall have not more than 6 district court magistrates. The chief judge of the thirty-sixth district may appoint 1 or more magistrates as permitted by this subsection. If a vacancy occurs in the office of district court magistrate, the chief judge may appoint a successor. Each magistrate appointed under this subsection shall serve at the pleasure of the chief judge of the thirty-sixth district.

(4) A person shall not be appointed district court magistrate under subsection

(3) unless the person is a registered elector in the district.

Mich. Comp. Laws § 600.8501.

The government argues that the delegation of "blanket authority" to the district judge to appoint magistrates absent formal county board approval satisfies the command of the statute as a matter of state law. This Court disagrees for several reasons.

First, the plain language of section one of the statute, which deals with counties such as Iosco County, creates a two-fold obligation upon a county board: the board must create the magistrate position, and the board must also approve the appointee. The first duty deals with funding, whereas the second describes an advice-and-consent process. The letter furnished in this case by Iosco County Board Chairman Erickson reflects a misunderstanding which confounds these two duties wherein the board does not step into the process absent budget implications. However, the statute states that once the county board creates the magistrate position, "[a]ll magistrates provided for shall be appointed by the judges of the district *and the appointments shall be subject to approval* by the county board of commissioners *before* a person assumes the duties of the office of magistrate." Mich. Comp. Laws § 600.8501(1) (emphasis added). According to Michigan law, the word "shall" means that approval is mandatory, and the requirement that the approval come "before" the person assumes the magistrate position implies that approval is a prerequisite, not a mere method of disqualification if the board chooses to act. *See Gilmore v. Parole Bd.*, 247 Mich.App. 205, 233, 635 N.W.2d 345, 360 (2001) (plain meaning of "shall" in statute indicates mandatory action). A contrary interpretation would essentially read the approval requirement out of the statute, which Michigan principles of statutory construc-tion do not permit. *See Huggett v. Dep't of Natural Res.*, 464 Mich. 711, 721, 629 N.W.2d 915, 921 (2001).

Second, the practice described by Chief Judge Yenior in his affidavit and Board Chairman Erickson in his statement more closely reflects the procedure described in section three of the statute. That section prescribes a system quite distinct from the approval process required for first- and second-class districts in section one, and third-class districts in section two. Section three vests appointment authority exclusively in the chief judge of the thirty-sixth district, and states that "[e]ach magistrate appointed under this subsection shall serve at the pleasure of the chief judge of the thirty-sixth district." Mich. Comp. Laws § 600.8501(3). Although budgetary restraints do technically limit the chief judge's appointment authority in Iosco County, the "blanket authority" arrangement that exists there much more closely resembles the process laid out in section three than section one, and the Michigan legislature explicitly limited section three to the thirty-sixth judicial district.

■ Third, an opinion from the Michigan Attorney General construing section two of the statute also suggests that county board ratification of magistrate appointments is required. *See* Mich. Op. Atty. Gen. No. 5905 (May 18, 1981). Although Michigan courts are not bound by attorney general opinions, they are recognized as persuasive authority. *See Williams v. City of Rochester Hills*, 243 Mich.App. 539, 557, 625 N.W.2d 64, 74 (2000). Opinion 5905 was issued in response to a query from a state senator asking whether the presiding judge of a district of the third class could, under Mich. Comp. Laws. § 600.8501(2), appoint a deputy clerk as a magistrate for the limited purpose of performing marriages and handling traffic

tickets, without the approval of the "district control unit." *Id.* In addition to finding such appointment of the deputy clerk as magistrate uniquely barred, the Attorney General also found "that the appointment of a district court magistrate by action of the judges in a third class district *must be approved* by the controlling units of the districts." *Id.* (emphasis added). Section two also uses the phrase "shall be subject to approval" when referring to the governing body or bodies which exercise political control over the judicial district. Because the legislature is presumed to use similar language within a statute for the same purpose, the Attorney General's construction of this same language in section two can also reasonably be extended to section one. *See Macomb County Prosecuting Attorney v. Murphy,* 464 Mich. 149, 627 N.W.2d 247, 251 (2001) (statutory provisions are to be construed harmoniously). Thus, it follows that under Michigan law, judicial appointments of magistrates in first- and second-class districts must be approved by county boards. Blanket delegation of the appointment authority to the judges does not suffice.

Laura Kruse's appointment as a district court "deputy" magistrate was never approved by the Iosco County Board of Commissioners. Because a magistrate in a first-class judicial district who has not been formally approved by the county board has not been properly appointed to the position, Ms. Kruse did not have the legal authority to perform the duties of that judicial office, including issuing search warrants.

■ The Sixth Circuit has held in *United States v. Scott,* 260 F.3d 512 (6th Cir. 2001), that warrants issued by an individual who is not properly appointed are void as a matter of law. In *Scott,* a sheriff's investigator had attempted without success to contact two circuit court judges from his Tennessee county for approval of a search warrant. Rather than attempt to contact the remaining two judges, the investigator approached a retired judge from the county who acted as a special judge when one of the regular judges was absent. The retired judge signed the warrant, the warrant was executed, and the defendant was charged with the unlawful manufacture of marijuana contrary to federal law. The district court recognized that the warrant was technically invalid, but held the exclusionary rule inapplicable because the investigator had acted in objective good faith in securing and executing the warrant.

On appeal, the court of appeals reversed. The Court recognized that with "few exceptions, the exclusionary rule requires the suppression of evidence obtained in violation of the Fourth Amendment," and that objective good faith is, under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), a defense to a technically invalid warrant. *Id.* at 514. The Court also found, however, that the case presented an issue of first impression in the federal courts. Despite what it found to be a "dearth of case law" on the subject, the Court found that *Leon* could not have been intended to save a warrant that was *per se* invalid.

> [W]e are confident that *Leon* did not contemplate a situation where a warrant is issued by a person lacking the requisite legal authority. *Leon* presupposed that the warrant was issued by a magistrate or judge clothed in the proper legal authority, defining the issue as whether the exclusionary rule applied to "evidence obtained by officers acting in reasonable reliance on a search warrant *issued by a detached and neutral magistrate* but ultimately found to be unsupported by probable cause.... We therefore hold that when a warrant is signed by someone who lacks the legal authority necessary to issue search warrants, the warrant is void *ab initio*".

*Id.* at 515. Proceeding to the facts, the Court also found that the officer had not exercised the objective good faith contemplated by *Leon* because the investigator had chosen to present the warrant to the retired judge rather than the active circuit judge, even though he knew that he could have reached the proper circuit judge at home. "Under these circumstances, the warrant is void and evidence seized pursuant to it must be excluded." *Id.*

The government here attempts to distinguish *Scott* by arguing that the holding was based solely on the officer's lack of good faith, not on the invalidity of the warrant. This Court does not read the decision to say that. It is true that the court of appeals was critical of the officer's choice of a retired judge to sign the warrant when active judges may have been available. However, this discussion followed the Court's unambiguous ruling that a warrant issued by someone who was not a proper judicial officer was void "*ab initio.*" *Id.* Black's Law Dictionary defines "*ab initio*" as "from the beginning." *Id.* at 4. (7th ed.1999). The Court concluded that the facts did not present "a case where police relied on a warrant that contained a mere technical deficiency. Judge Barker possessed no legal authority pursuant to which he could issue a valid warrant. Under these circumstances, the warrant is void and evidence seized pursuant to it must be excluded." *Scott,* 260 F.3d at 515.

The Court concludes, therefore, that Laura Kruse's lack of authority to issue the search warrant in this case rendered it void. The evidence seized pursuant thereto must be suppressed.

■ In their motion, the defendants also argue that certain statements which they made to the police must also be suppressed. There was no evidence of the statements or the circumstances under which they were made presented at the evidentiary hearing. When queried about them, neither the defendants nor the government were able to provide any facts which described the statements' contents or suggest how or whether they were derived from the search or the evidence seized from the defendants' residence. The Court is unable to conclude on this record that the statements were the product of any unlawful governmental conduct, and therefore the request to suppress the statements will be denied.

### III.

Although the defendants have failed to demonstrate that the state court deputy magistrate was not capable of determining probable cause despite her lack of formal legal training, the Court concludes that she did not have the lawful authority to issue the search warrant in this case, rendering the warrant void.

Accordingly, it is **ORDERED** that the defendants' amended motion to suppress the evidence seized pursuant to the search warrant [dkt # 17] is **GRANTED**. The motion to suppress statements made by the defendants is **DENIED**.

It is further **ORDERED** that the defendants' previous motion to suppress the evidence in this case [dkt # 15] is **DISMISSED AS MOOT**.