117 P.3d 316 (2005)
Darwin L. BOSTEDER, Appellant,
v.
The CITY OF RENTON, a municipal corporation; Robert L. Arthur and Jane Doe Arthur, husband and wife; James Gray and Jane Doe Gray, husband and wife; Charles J. Karlewicz and Jane Doe Karlewicz, husband and wife; Christine Paget and John Doe Paget, husband and wife; James D. Gould and Jane Doe Gould, husband and wife; Mark Klinke and Jane Doe Klinke, husband and wife; Terry Barclay and Jane Doe Barclay, husband and wife, Respondents.
No. 74934-5.
Supreme Court of Washington, En Banc.
Argued October 26, 2004.
Decided July 28, 2005.
*318 Eric Rolf Stahlfeld, Seattle, for Appellant.
Zanetta Lehua Fontes, Warren Barber & Fontes PS, Renton, John William Cobb, Seattle, for Respondents.
FAIRHURST, J.
¶ 1 In a series of three decisions in 1994 and 1997, we determined that noncriminal administrative search warrants are invalid under the state constitution absent a court rule or statute that authorizes the issuance of such warrants. In those cases, we found no such authorizing statute or court rule and declared the warrants and searches purportedly conducted pursuant to those warrants void. We are now asked to determine whether the same type of warrant is also invalid under the Fourth Amendment to the United States Constitution absent an authorizing statute or court rule. We answer that question in the affirmative.
¶ 2 We also must determine whether the claim filing statute, RCW 4.96.010-.020, applies to suits against individual employees of local governments and whether the statute's procedural requirements mandate strict compliance. We hold that the statute does apply to suits against individuals for acts committed within the scope of their employment and requires strict compliance with its procedural requirements.
¶ 3 We, therefore, affirm in part and reverse in part.

*319 I. FACTS
¶ 4 The Renton Police Department formed a Community Patrol Resource Team (CPR Team) to work in conjunction with the Renton Code Compliance Enforcement Team in an effort to clean up or abate properties constituting a nuisance. The CPR Team initiated an investigation of the Heritage House Apartment Building in Renton on April 3, 1999, after receiving several complaints from neighbors regarding drug activity and the condition of the building. At the time, appellant Darwin L. Bosteder owned this property. The CPR Team visited the property on April 9, 1999, taking several pictures and entering individual apartments with the tenants' permission. The CPR Team used the information gathered on this visit to obtain a search warrant from Renton District Court Judge Charles J. Delaurenti on April 21, 1999. The warrant was issued based upon a finding of probable cause that "violations of the Uniform Housing Code and of the Uniform Code for the Abatement of Dangerous Building[s had] been committed and that evidence of those violations [was] located at certain premises." Clerk's Papers (CP) at 113.
¶ 5 Pursuant to that warrant, the CPR Team[1] conducted a search of the property on April 27, 1999. The search revealed several violations of the 1997 Uniform Code for the Abatement of Dangerous Buildings (Int'l Conference of Bldg. Officials) [hereinafter Code for Dangerous Buildings] (adopted by ordinance in Renton) and the owner and tenants were ordered to vacate the premises within three days.[2] Bosteder claims that the CPR Team searched his property without authority of law under an invalid warrant, entered private areas without his permission, and "broke locks and pried open doors as part of their search." CP at 55.
¶ 6 On April 26, 2002, exactly three years after the claimed trespass, Bosteder filed a claim for damages with the city[3] and served a copy of a summons and complaint on the city asserting state trespass and 42 U.S.C. § 1983 claims. The complaint named as defendants the city, the six members of the CPR Team who conducted the search, Terry Barclay, a King County inspector who was also present at the search by invitation of one of the members of the CPR Team, and respective spouses. Included in the complaint was a provision stating that "if a claim for damages must be filed as a prerequisite for bringing this action," Bosteder would "seek to amend this Complaint after the waiting period required under RCW 4.96.020." CP at 5. RCW 4.96.020(4) provides:
No action shall be commenced against any local governmental entity for damages arising out of tortious conduct until sixty days have elapsed after the claim has first been presented to and filed with the governing body thereof. The applicable period of limitations within which an action must be commenced shall be tolled during the sixty-day period.
¶ 7 Bosteder served an amended summons and complaint on the city on June 26, 2002  60 days after the claim for damages was filed and the original complaint served on the city. The amended complaint included a provision alleging that 60 days had passed following the filing of a claim for damages with the city as required by RCW 4.96.020.
¶ 8 The original and amended complaints were filed in King County Superior Court on July 24, 2002.

Renton Defendants
¶ 9 The superior court granted the city's *320 motion on behalf of all Renton defendants[4] for partial summary judgment on the § 1983 claim "on the sole ground that the warrant at issue was valid under the Fourth Amendment." CP at 221. The court later dismissed the trespass claim against the Renton defendants upon their second motion for partial summary judgment. Although not stated in the order granting summary judgment or in any transcripts provided in the record, the ruling presumably was made because Bosteder failed to wait 60 days after filing a claim for damages with the city before commencing a civil action for trespass.

King County Defendant
¶ 10 Barclay, the King County inspector, was not served with a summons and complaint until March 27, 2003-11 months after the city was originally served, and 8 months after the complaints were filed. At no time did Bosteder file a claim with King County for damages. All claims against Barclay were dismissed pursuant to her motion for summary judgment.[5]
¶ 11 Bosteder appeals all three of the superior court orders granting summary judgment and dismissal.

II. ANALYSIS

A. 42 U.S.C. § 1983 Claim
¶ 12 The superior court dismissed the 42 U.S.C. § 1983 claim against all defendants because it found the warrant was valid under the Fourth Amendment. We hold that the warrant was invalid and that the search conducted was unreasonable and in violation of the Fourth Amendment. However, we affirm the dismissal of the § 1983 claim against the individuals because they were qualifiedly immune, but reverse dismissal of the § 1983 claim against the city and remand for additional proceedings.
¶ 13 An individual claiming a violation of a federal constitutional right may seek relief under 42 U.S.C. § 1983: "There are only two essential elements in a § 1983 action: (1) the plaintiff must show that some person deprived it of a federal constitutional or statutory right; and (2) that person must have been acting under color of state law." Sintra, Inc. v. City of Seattle, 119 Wash.2d 1, 11, 829 P.2d 765 (1992). The Fourth Amendment protects citizens from unreasonable searches and seizures. A search generally must be executed pursuant to a lawfully issued warrant based upon probable cause. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). A search conducted without a valid warrant is per se unreasonable subject to narrowly defined exceptions. Id. Bosteder claims that the issuance of the administrative search warrant was a violation of the Fourth Amendment because the district court judge did not have authority to issue noncriminal administrative search warrants of the type in this case. Consequently, Bosteder argues that the search conducted purportedly pursuant to that warrant was actually warrantless and unreasonable and violated his Fourth Amendment rights.
¶ 14 Initially, an examination must be made into whether the warrant was valid under federal law. If the warrant was valid, the search may not be problematic. However, if the warrant was invalid, the search was warrantless and an inquiry should be made into its reasonableness. Finally, we will determine if the individual respondents were qualifiedly immune and whether the city may be liable by reason of an official policy or pervasive custom.

1. Was the warrant valid?
¶ 15 The Fourth Amendment warrant requirement may not be violated simply because an issuing magistrate is neither a judge nor a lawyer. Shadwick v. City of Tampa, 407 U.S. 345, 350, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972). In Shadwick, the United States Supreme Court determined that *321 the City of Tampa's procedure for allowing municipal court clerks to issue certain arrest warrants conformed with the basic constitutional requirements that "an issuing magistrate must . . . be neutral and detached, and . . . capable of determining whether probable cause exists for the requested arrest or search." Id. at 350. The City of Tampa gave the clerks direct authority to issue warrants; thus, the warrants were initially valid as long as the grant of authority was constitutionally permissible. Id.
¶ 16 In contrast, the Court has not dealt with a situation where an individual had no state authority to issue the warrant in question from the beginning. A couple of lower federal courts, however, have ruled on the issue and found such warrants void. In United States v. Scott, 260 F.3d 512, 515 (6th Cir.2001), the United States Court of Appeals for the Sixth Circuit held that "when a warrant is signed by someone who lacks the legal authority necessary to issue search warrants, the warrant is void ab initio." The Sixth Circuit held that a warrant issued by a retired judge was void and evidence seized pursuant to that warrant must be excluded. Id. "[A]b initio" is defined as "[f]rom the beginning." BLACK'S LAW DICTIONARY at 5 (8th ed.2004). As such, a warrant issued by one without legal authority to do so is void from its inception. Scott, 260 F.3d at 515; accord United States v. Neering, 194 F.Supp.2d 620, 628 (E.D.Mich.2002) (holding that a deputy magistrate not properly appointed to the position lacked authority to issue a warrant, rendering it void).
¶ 17 "[M]unicipal courts have no inherent authority to issue administrative inspection warrants." City of Seattle v. McCready, 124 Wash.2d 300, 309, 877 P.2d 686 (1994) (McCready II) (citing and discussing City of Seattle v. McCready, 123 Wash.2d 260, 272-76, 868 P.2d 134 (1994) (McCready I)). Because courts "have no inherent authority to issue administrative search warrants, they must rely on an authorizing statute or court rule." Id. (citing McCready I, 123 Wash.2d 260, 868 P.2d 134). In the second of a series of three decisions in City of Seattle v. McCready, we found that, because no authority could be found in statute or court rule to issue administrative warrants for housing code violations, courts may issue administrative search warrants "only if the application for the inspection warrant alleges a housing code violation which constitutes a crime rather than [merely] a civil infraction." Id. at 310, 877 P.2d 686.
¶ 18 The first two McCready decisions were grounded only in state constitutional law. Because article I, section 7 of the Washington Constitution requires "adequate `authority of law'" for a governmental intrusion, we held in McCready I that warrants issued in the absence of statute or court rule authorization "cannot serve as the authority of law for a governmental disturbance of an individual's private affairs." McCready I, 123 Wash.2d at 271-72, 868 P.2d 134. We declined to address whether the warrants at issue were also contrary to the federal constitution. Id. at 281-82, 868 P.2d 134. In McCready II, we quashed an administrative search warrant issued by a municipal court as violative of article I, section 7, relying on McCready I. McCready II, 124 Wash.2d at 310, 877 P.2d 686. We rejected arguments that a warrant issued by a municipal court judge violated the Fourth Amendment because it was "too broad in scope, was unsupported by probable cause, [or] was issued ex parte." McCready II, 124 Wash.2d at 311, 877 P.2d 686. We did not explicitly address whether the warrant, or search pursuant to that warrant, violated the Fourth Amendment for the reason that the magistrate lacked legal authority to issue the warrant. Id. We did, however, conjure up broad statements that are not necessarily limited to a discussion of article I, section 7 throughout the McCready decisions. For example, we noted that "[t]here is . . . no general common law right to issue search warrants," and "the authority for search warrants has always been derived from specific legislative authorizations or court rules." McCready I, 123 Wash.2d at 274, 868 P.2d 134.
¶ 19 We reiterated the above holdings for a third time in City of Seattle v. McCready, 131 Wash.2d 266, 931 P.2d 156 (1997) (McCready III). There, we held that administrative search warrants issued on a "less than traditional probable cause standard" did not violate *322 the Fourth Amendment because they conformed with standards outlined in Camara v. Municipal Court of City and County of San Francisco, 387 U.S. 523, 538, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (requiring "`reasonable legislative or administrative standards'" for administrative searches to enforce local codes). McCready III, 131 Wash.2d at 272-73, 931 P.2d 156. We emphasized that finding a violation of article I, section 7 does not necessitate finding a violation of the Fourth Amendment. Id. at 273, 931 P.2d 156. Again, we did not address the argument now being presented-that because the issuing judge lacked legal authority to issue the warrant, it was void from inception and the search conducted pursuant to the purported warrant was actually warrantless under any constitution.
¶ 20 In the affidavit seeking the search warrant, members of the CPR Team asserted that the judge had authority to issue the warrant under the "right of entry" provisions of the Code for Dangerous Buildings § 201.3 and the 1997 Uniform Housing Code § 201.2 (Int'l Conference of Bldg. Officials) [hereinafter Housing Code], adopted by Renton City Ordinance. The CPR Team cited King County v. Primeau, 98 Wash.2d 321, 654 P.2d 1199 (1982), to show that these provisions have been judicially upheld as providing authority to seek and grant warrants in these instances. But Primeau was decided prior to the McCready decisions and, in McCready I, we clearly stated that a "right of entry" granted in building or housing codes does not authorize courts to issue search warrants:
[A] right of entry, and even an authorization to seek a warrant to implement a right of entry, is not equivalent to a legislative authorization for a court to issue a warrant. . . . The distinction between a right of entry and the authorization to issue a search warrant can be simply demonstrated by comparing the uniform codes on which Seattle relies with a statute which does authorize a court to issue a warrant on less than probable cause. An example of a code which does authorize such a warrant is RCW 15.09.070, which governs inspections for horticultural pests and diseases, grants horticultural officials a right of entry onto private premises on less than probable cause, including for the purpose of general inspection. The statute allows those officials to enforce their right of entry by seeking search warrants and specifically allows: "[a] court may upon such application issue the search warrant for the purpose requested". . . . The Legislature has crafted a number of statutory schemes similar to RCW 15.09.070, whereby courts are explicitly authorized to issue administrative search warrants in support of the enforcement of specific laws. See RCW 15.17.190 (horticultural grading laws); RCW 16.57.180 (livestock identification laws); RCW 17.24.021 (insects, pests, and plant diseases); RCW 19.94.260 (weights and measures laws); RCW 69.50.502 (pharmaceutical premises).
McCready I, 123 Wash.2d at 278-79, 868 P.2d 134 (footnote omitted) (further holding that the incorporation of several uniform housing codes in RCW 19.27.031 does not manifest legislative intent to give courts authority "to issue warrants in support of enforcement activities").
¶ 21 In the codes relied upon by the city, the right of entry provision simply provides that "[i]f entry is refused, the building official shall have recourse to the remedies provided by law to secure entry." Code for Dangerous Buildings § 201.3; Housing Code § 201.2. In McCready I, we held that this provision necessarily referred to one or more other provisions specifically granting those remedies, and in the case of the codes at issue, no such remedies could be found.[6]McCready I, 123 Wash.2d at 278-80, 868 P.2d 134. No legislation since the McCready decisions has updated the incorporated uniform codes to include a specific authorization *323 for courts to issue warrants in these types of cases. As such, there is still no authority from which a search warrant of the type sought here can be granted in Washington State. It appears, therefore, that under Scott and Neering, the warrant was void at the outset. See Scott, 260 F.3d at 515; Neering, 194 F.Supp.2d at 628.
¶ 22 Scott and Neering might be distinguished from the present case because in those cases, the issuing individual had no legal authority to issue any warrants. Here, the district judge had the authority to issue search warrants for criminal violations or other purposes authorized by statute or court rule, but lacked the authority to issue an administrative search warrant for noncriminal building or housing code violations. Despite this distinction, Scott and Neering do stand for the proposition that a warrant is void ab initio when issued by someone without the authority to do so.
¶ 23 The district court judge did not have authority to issue the administrative search warrant in this case and, thus, the warrant was never valid. Support for this proposition can be found by taking a holistic look at federal administrative search cases. The Court in Camara required a "warrant procedure" for administrative searches, not simply a "warrant," and further specified that the warrant must be valid. Camara, 387 U.S. at 534, 529, 87 S.Ct. 1727. Thus, the Court in Camara contemplated that there must be processes under which these types of warrants are sought and issued. Indeed, many federal cases analyzing administrative searches are actually analyzing the statute granting authority to seek and issue such warrants, or to search without a warrant. See, e.g., Grimm v. Borough of Norristown, 226 F.Supp.2d 606, 639-40 (E.D.Pa.2002) (analyzing an ordinance that specifically provided for issuance of a warrant or order); Balsa U.S.A., Inc. v. Austin, 60 F.Supp.2d 723, 728-29 (W.D.Mich.1999) ("Section 29 grants the department authority to seek an administrative search warrant if permission to enter the place of employment is denied."); United States v. Schafer, 461 F.2d 856, 858 (9th Cir.1972) ("However, we conclude that the search provisions in the statutes and regulation under consideration on this appeal do not run afoul of the Fourth Amendment.").[7] In most cases, authority to issue warrants has been delegated and the controversy surrounds whether the delegation was proper. Further, the fact that under Fourth Amendment jurisprudence non-judges and non-lawyers have been permitted to issue warrants suggests a delegation of authority to do so is an initial requirement.
¶ 24 A search for case law in other jurisdictions addressing whether warrants issued without specific authority are valid under the Fourth Amendment has proved fruitless, save for one Nevada Supreme Court case from 1969. In Owens v. City of N. Las Vegas, 85 Nev. 105, 450 P.2d 784, 785-86 (1969), the court held that an administrative search warrant to investigate building code violations was valid under the Fourth Amendment even though Nevada state law did not specifically authorize the issuance of such a warrant. The court cited to a United States Supreme Court case in support: "Just as a search authorized by state law may be an unreasonable one under the Fourth Amendment, so may a search not expressly authorized by state law be justified as a constitutionally reasonable one." Id. at 786 (citing Cooper v. California, 386 U.S. 58, 61, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967)). However, Owens is not entirely persuasive, and the Supreme Court quote relied upon was taken out of a different context. See Cooper, 386 U.S. at 61, 87 S.Ct. 788.[8] Wayne LaFave's *324 treatise cites only to the Nevada case for the proposition that "[i]t has been held that a Camara-type search warrant may be issued even in the absence of such legislative action," but otherwise notes that several states adopted legislation authorizing the issuance of search warrants for housing code violations following the Camara decision. 4 Wayne LaFave, Search and Seizure § 10.1(b), at 380 n. 55 (3d ed.1996).
¶ 25 In sum, federal decisions outlining the requirements for valid search warrants presuppose, for the most part, that persons issuing those warrants have been authorized to do so. The concern, therefore, in those cases is whether delegation was proper under the federal constitution. Scott and Neering appear to address a newer question of what happens when an individual does not have the delegated authority to issue a warrant he or she purports to issue, concluding that the warrants are void from inception. Similarly here, we have an instance where the judge did not have the inherent or delegated power to issue the warrant involved in this case. The warrant was issued without authority and, therefore, was void from the start.

2. Was the search unreasonable?
¶ 26 If a warrant is void from inception, a search purported to be conducted pursuant to that warrant is a warrantless search. Consequently, some exception to the warrant requirement must apply for the search to be valid under the Fourth Amendment. Schneckloth, 412 U.S. at 219, 93 S.Ct. 2041. This court discussed the constitutional protections for administrative searches in Washington Massage Foundation v. Nelson:
The Fourth Amendment requires more individualistic safeguards of the citizen's privacy when an inspection[] is aimed at the physical condition and characteristics of a building rather than a particular business activity. In such situations, if the occupant does not consent to the inspection, the government must seek a warrant and establish probable cause via a reasonable legislative and administrative scheme. . . .
However, when an industry or business is subject to extensive governmental regulation and frequent unannounced inspections are necessary to insure compliance, warrantless inspections are valid if authorized by a statute which sufficiently delineates the scope, time and place of inspection.
87 Wash.2d 948, 952-53, 558 P.2d 231 (1976); see also Camara, 387 U.S. at 538-39, 87 S.Ct. 1727 (recognizing the need for the safeguards provided by a warrant in most administrative searches). The proof necessary for probable cause in an administrative search differs in character from that which is usually required. See Camara, 387 U.S. at 538-39, 87 S.Ct. 1727. It does not have to be particularized, but rather can be based on "reasonable legislative or administrative standards" taking into account "the passage of time, the nature of the building . . ., or the condition of the entire area." Id. at 538, 87 S.Ct. 1727.
¶ 27 Respondents do not purport to characterize their search as one of a business requiring "extensive governmental regulation and frequent unannounced inspections." See Washington Massage Foundation, 87 Wash.2d at 953, 558 P.2d 231. Rather, the inspections were "aimed at the physical condition and characteristics of a building." Id. at 952, 558 P.2d 231; see CP at 34-36 (search warrant affidavit). Therefore, the exception to the warrant requirement for administrative searches does not appear to apply. See also Conner v. City of Santa Ana, 897 F.2d 1487, 1490 (9th Cir.1990) ("It is clear that the warrant requirement of the [F]ourth [A]mendment applies to entries onto private land to search for and abate suspected nuisances." (citing Michigan v. Tyler, 436 U.S. 499, 504-07, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978); Camara, 387 U.S. at 530, 87 S.Ct. 1727)). While the probable cause necessary to secure the warrant in this case may have been qualitatively different from that required for search warrants in criminal cases, a warrant was still required. Camara, 387 U.S. at 538-39, 87 S.Ct. 1727. Here, there was effectively no warrant because there was *325 no statutory or court rule authorization to issue such warrants. As such, the search was unreasonable and in violation of the Fourth Amendment.
¶ 28 Our inquiry does not end here, however, as the individual respondents have claimed they were qualifiedly immune from liability under § 1983 and the city asserts that there was no official policy or pervasive custom such that it could be liable. If we agree with these arguments, the superior court's result would be the same and we would affirm on other grounds.

3. Were the individuals entitled to qualified immunity?
¶ 29 Government officers are qualifiedly immune from suit in their individual capacities under § 1983 unless the plaintiff can establish that the alleged violation was of a "clearly established" federal constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Rather than claiming violation of a general right to be free from unreasonable searches and seizures, "the right the official is alleged to have violated must have been `clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). An official action is not protected by qualified immunity just because it has not previously been held unlawful so long as "in the light of pre-existing law the unlawfulness [is] apparent." Id. If the defendants raise the affirmative defense of qualified immunity in their motions for summary judgment, "the plaintiff bears the burden of demonstrating the existence of the allegedly `clearly established' constitutional right." Robinson v. City of Seattle, 119 Wash.2d 34, 65-66, 830 P.2d 318 (1992).
¶ 30 Initially, then, we must outline what the officers were "doing," and then determine whether a reasonable officer would know that such conduct violated Bosteder's federal constitutional rights "in the light of pre-existing law." Anderson, 483 U.S. at 640, 107 S.Ct. 3034. We held above that there is no authority within the state of Washington from which to obtain or grant an administrative search warrant of the kind at issue here. Therefore, the search was warrantless, and because no exception to the warrant requirement applies, it was unreasonable and a Fourth Amendment violation. The questionable conduct, then, was (1) the application for a warrant that could not be validly issued by reason of lack of authority and (2) the search made pursuant to the invalid warrant.
¶ 31 This court in the McCready decisions clearly stated that courts are without authority to issue administrative warrants of the type at issue in this case in the absence of legislative or court rule authority. We further stated that there is currently no legislative or court rule authority to issue administrative search warrants for noncriminal building or housing code violations. This suggests the law was clearly established at the time the current warrant was sought and the defendants would not have been entitled to qualified immunity. Additionally, in the affidavit for the search warrant, Karlewicz did not acknowledge the McCready decisions and cited to earlier case law to assert the search warrant was authorized by building and housing codes. Under the McCready decisions, this was incorrect.
¶ 32 Without question, the individuals here should have known that in the McCready decisions we prohibited conduct similar to that at issue today and ought to have refrained from engaging in such conduct entirely. But we cannot ignore the fact that in the McCready decisions we specified that a Fourth Amendment violation does not necessarily follow from a state constitutional violation and found that conduct similar to that here did not jeopardize a Fourth Amendment right.[9]
¶ 33 Because it would be objectively reasonable for an officer to glean from the McCready decisions that the Fourth Amendment *326 was not violated in a situation very similar to the one we consider here (though we now clarify to the contrary), we hold that the individuals were qualifiedly immune from liability under § 1983 and affirm the dismissal of that claim against them. The individuals are not completely relieved of personal liability for their conduct, however, as they may still be answerable for state trespass as discussed below.

4. Is the city liable under § 1983?
¶ 34 A municipality may be subject to § 1983 liability because it is considered a "person" as the term is used in the statute. Sintra, 119 Wash.2d at 11, 829 P.2d 765. However, a municipality is not liable under § 1983 "solely because it employs a tortfeasor." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Rather, a plaintiff wishing to compel liability upon a municipality under § 1983 must show that an official policy or pervasive custom of the city caused the plaintiff's injury. Id.; see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. . . . Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.
Brown, 520 U.S. at 403-04, 117 S.Ct. 1382 (citation omitted) (citing Monell, 436 U.S. at 690-91, 98 S.Ct. 2018 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970))).[10]
¶ 35 Because the superior court dismissed the § 1983 claim on the initial question of whether there was a Fourth Amendment violation, it did not address the parties' arguments regarding municipal liability. Bosteder makes several allegations that might lead to establishing the city's liability, but the record is underdeveloped and it would be inappropriate for us to determine at this time whether the city's policies or customs were the driving force behind the CPR Team's illegal acts.[11]
¶ 36 We, therefore, reverse the dismissal of the § 1983 claim against the city and remand for further proceedings to determine whether an official policy or pervasive custom caused the CPR Team members to violate Bosteder's Fourth Amendment rights.

*327 B. The Trespass Claim
¶ 37 The superior court granted summary judgment on the trespass claim in favor of Terry Barclay and the Renton defendants. All defendants argued below that dismissal was proper because Bosteder failed to comply with RCW 4.96.020(4).[12] Bosteder maintains that: (1) RCW 4.96.020(4) does not apply to suits against individuals, (2) RCW 4.96.020(4) does not apply to intentional torts, and (3) even though he served the city with the original complaint on the same day he filed the claim for damages with the city, he complied with RCW 4.96.020(4)'s requirements by serving his amended complaint 60 days later. We hold that RCW 4.96.020(4) does apply to suits against individual employees for acts committed within the scope of their employment and Bosteder failed to comply with the statute.
¶ 38 Before plaintiffs can commence civil tort actions against local government entities, they must first present claims for damages with those entities and wait 60 days. RCW 4.96.020(4). One of the purposes of the claim filing statute is to allow local governments to investigate and remedy any potential claims prior to or in lieu of entrance of those claims into the judicial system. Medina v. Pub. Util. Dist. No. 1 of Benton County, 147 Wash.2d 303, 310, 53 P.3d 993 (2002). Although the legislature proscribed that the "laws specifying the content for such claims shall be liberally construed so that substantial compliance therewith will be deemed satisfactory," it made no such allowance for the procedure for filing such claims. RCW 4.96.010(1) (emphasis added). Compare RCW 4.96.010(1) with RCW 4.96.020. Moreover, our courts have strictly construed the procedural requirements of RCW 4.96.020. See, e.g., Reyes v. City of Renton, 121 Wash.App. 498, 502, 86 P.3d 155 ("Failure to strictly comply with statutory filing requirements leads to dismissal of the action."), review denied, 152 Wash.2d 1031, 103 P.3d 200 (2004); Sievers v. City of Mountlake Terrace, 97 Wash.App. 181, 183, 983 P.2d 1127 (1999) ("This court is obliged to give full effect to the plain language of the statute even when the results of doing so may seem unduly harsh.").
¶ 39 Bosteder sued both the city and the individual persons involved in the search of his building for trespass. Because he asserts the claim filing statute does not apply to suits against individuals, we discuss his trespass claim against those individuals separately from his claim against the city.

1. The claim against the individual defendants
¶ 40 Bosteder argues that the superior court improperly dismissed his trespass claim against the individual defendants because RCW 4.96.020(4) does not shield such individuals from liability. The Court of Appeals has held that the claim filing statute does apply to suits against individuals where the conduct complained of occurred in the course of their employment with a government entity. See, e.g., Woods v. Bailet, 116 Wash.App. 658, 67 P.3d 511 (2003) (holding that claim filing statute applied to individual doctor because the claim was based on the doctor's scope of employment and municipal corporation would be obligated to defend him); Hardesty v. Stenchever, 82 Wash.App. 253, 917 P.2d 577 (1996) (state employee). We agree, and hold that the statute applies to suits against individuals when the alleged acts were committed within the course of their employment, and affirm the superior court's dismissal of Bosteder's trespass claim against the individual defendants.[13]
¶ 41 The prime objective in statutory construction is to effectuate legislative intent. Rest. Dev., Inc. v. Cananwill, Inc., 150 Wash.2d 674, 681, 80 P.3d 598 (2003). We always begin by looking at the plain meaning *328 of a statute, but in discerning this meaning we take into account all of the text in the statute and in related statutes that help discern legislative intent. Id. at 682, 80 P.3d 598.
¶ 42 To support his argument that the claim filing statute should not apply to suits against individuals, Bosteder cites to this court's interpretation of a similar provision in our decision in Boss v. City of Spokane, 63 Wash.2d 305, 387 P.2d 67 (1963). In Boss, we interpreted a former Spokane City Ordinance with similar, but not identical, language as that contained in the present claim filing statute applicable to local government entities. We were careful in Boss to distinguish the provision articulating to what types of actions the claim filing ordinance applied ("`for injuries to property sustained by . . . any act of the city, or any officer. . . of the city'") from the provision barring suit when the claim filing procedure was not complied with ("`Failure to present such claim . . . shall bar any action against the city for such alleged damage or injury.'"). Id. at 309, 387 P.2d 67 (quoting former City of Spokane Charter, art. 12, § 115). The latter provision was held only to bar suits against the city itself, even though the former provision contemplated claims involving the actions of the city or any officer thereof. Thus, in Boss, the court held that the claims against the individual policemen were not subject to the claim filing ordinance. Id. The court was clear that only the latter provision was the "operative language which sets down the consequence of failure to file" a claim prior to initiating a civil suit. Id.[14]
¶ 43 At first glance, the statute at issue in this case seems to be subject to the same interpretation. RCW 4.96.010(1) provides that local government entities can be sued for damages arising out of their own conduct or the conduct of their employees while acting within the scope of their employment. It further states that "[f]iling a claim for damages within the time allowed by law shall be a condition precedent to the commencement of any action claiming damages." RCW 4.96.010(1). Thus, under RCW 4.96.010(1), suits may be maintained against a local government entity for the conduct of its employees, and such suits require adherence to the claim filing procedure. The provision says nothing of suits against the individuals themselves. RCW 4.96.010 is comparable to the section in Boss that identified what types of grievances the claim filing procedure applied to rather than to the operative language that actually barred suit for failing to comply.
¶ 44 The provision that bars suit when the statutory procedure is not followed is RCW 4.96.020(4). There, the legislature plainly states that "[n]o action shall be commenced against any local governmental entity for damages arising out of tortious conduct until" a claim for damages is filed with that entity and 60 days have passed. RCW 4.96.020(4) (emphasis added). The statutory definition of "local governmental entity" does not include individual employees, even when performing their official duties. RCW 4.96.010(2).[15] Applying our reasoning in Boss, it would initially appear that, had the legislature intended to shield officers sued individually, it would have added "the appropriate language, such as, `or any officer,'" (see Boss, 63 Wash.2d at 309, 387 P.2d 67) following its designation of "any local governmental entity."
¶ 45 Despite the above analysis, interpreting the claim filing statute in this manner would have a serious consequence that we think the legislature did not intend when the statutory context is considered. RCW 4.96.041 requires local governments to pay for the defense of their employees when they are sued individually for acts committed within the scope of their employment. Unlike Oregon, Oklahoma, and Indiana, Washington does not have a statute that requires plaintiffs to sue only the local government (rather than individual employees) for acts *329 committed within the scope of employment. Or.Rev.Stat. § 30.265(1); Okla. Stat. Ann. tit. 51, § 153; Ind.Code § 34-13-3-5(a). Thus, whether plaintiffs name individuals in the suit, the local government entity, or both, the local government's finances will be implicated if the alleged acts occurred in the scope of the individuals' employment.
¶ 46 Under Bosteder's interpretation, though, only when plaintiffs name the local government as a defendant do the plaintiffs have to comply with the claim filing statute. Even for acts committed within the scope of employment, where plaintiffs may recover judgments to be paid out of local government funds, plaintiffs would be able to bypass the claim filing statute in its entirety by naming only the individual employees of the local government as defendants. The legislature could not have intended such a large loophole to the claim filing statute. Local governments act through the conduct of individual employees and giving plaintiffs the ability to avoid the claim filing statute through mere semantics is illogical.
¶ 47 The fact that the legislature did not include language that would have made its intent clearer does not mean that the legislature did not intend to apply the procedural requirements of the claim filing statute to any claims that would subject the government entity to liability. We "avoid literal reading of a statute which would result in unlikely, absurd, or strained consequences. `The spirit or purpose of an enactment should prevail over . . . express but inept wording.'" Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles, 148 Wash.2d 224, 239, 59 P.3d 655 (2002) (quoting State v. Day, 96 Wash.2d 646, 648, 638 P.2d 546 (1981)), cert. denied, 538 U.S. 1057, 123 S.Ct. 2221, 155 L.Ed.2d 1107 (2003). In this case, it is less reasonable to assume the legislature intended to leave such a gaping hole in its claim filing statutes. A more reasonable interpretation is that the legislature intended the procedural requirements to apply to any claims alleging the government was at fault  either as an entity or through the conduct of its individual employees.
¶ 48 Bosteder's analogy to our decision in Boss is compelling, but the decision is distinguishable. RCW 4.96.041, the statute requiring local governments to pay for the defense of suits against their employees, was not in existence when we decided Boss. In refusing to apply a claim filing ordinance to "shield the officials in their individual capacities," the court in Boss, 63 Wash.2d at 309, 387 P.2d 67, did not have occasion to consider the relationship between the claim filing ordinance and any law requiring the city to remain financially liable regardless of the named defendants. We are presented with that occasion here. Applying the interpretation for which Bosteder advocates, we would be leaving a substantially large loophole for plaintiffs to access government funds without being subject to the procedural requirements of the claim filing statute.[16] This would negate a key purpose of the claim filing statute  to allow local government time to investigate and attempt to settle claims prior to costly litigation. Medina, 147 Wash.2d at 313, 53 P.3d 993.
¶ 49 The concurrence/dissent seems to suggest that this purpose is less apt when an individual employee is named in a lawsuit rather than the entire governmental entity. See concurrence/dissent (Sanders, J.) at 336 ("Moreover, individuals do not need to investigate their own conduct and remedy it, which is a rationale behind the claim filing statute."). This is not so and misses the point. It is not the individuals who need time to investigate and remedy allegedly tortious conduct, it is the governmental entities that employ those individuals  that may in fact be financially liable for employee conduct despite not being named a defendant in the suit  that need notice and time to investigate the claim. This purpose is not any less furthered when individuals are named in a suit rather than the governmental entities and, in fact, is more applicable in such instances. A local government is less likely to be aware of allegedly tortious conduct when only its individual employees have been identified *330 as the tortfeasors, despite the fact that the local government may end up paying for the defense of the employees as well as for any final judgment.
¶ 50 We, therefore, decline to extend the holding in Boss to RCW 4.96.020, and hold that RCW 4.96.020 applies to suits against individuals when the alleged conduct occurred in the scope of the individuals' employment. Therefore, we affirm the dismissal of the trespass claim against the individuals where Bosteder alleged they acted within the scope of their employment and reverse and remand for further proceedings only with respect to the claim that the individuals acted outside of the scope of their employment.

2. The claim against the city
¶ 51 The trespass claim against the city was subject to the claim filing statute because the city clearly falls within the purview of a "local governmental entity" as outlined in RCW 4.96.010(2). Bosteder argues that he fully complied with the procedural requirements of RCW 4.96.020(4) with respect to his trespass claim against the city or, alternatively, he seems to suggest that substantial compliance should apply to save that claim. He argues that his first complaint, the one served on the same day the claim for damages was filed with the city, asserted claims only against the individual defendants and it was not until his amended complaint, served 60 days later, that he asserted claims against the city. Bosteder's argument is without merit. Both the original and amended complaints named the city as a defendant. The relevant language in both complaints alleged that all acts of the individuals were committed on behalf of the city and that "[t]he City of Renton is liable for the acts of its employees." CP at 5, 9 (adding that the city is also liable for its policies). The only language that differs in substance from the original to the amended complaint is that in the original, Bosteder alleged that "if a claim for damages must be filed as a prerequisite for bringing this action Bosteder will seek to amend this Complaint after the waiting period required in RCW 4.96.020," and in the amended complaint, the plaintiff alleged that "[a] claim for damages has been filed prior to bringing this amended Complaint and the 60-day waiting period required under RCW 4.96.020 has elapsed." Compare CP at 5 with CP at 9.
¶ 52 Because the original complaint asserted a trespass claim against the city, and the complaint was served on the same day the claim for damages was filed, thereby commencing the action, Bosteder did not comply with the 60-day waiting period requirement. His attempt to rectify that problem by amending his complaint 60 days later does not change that fact. See RCW 4.16.170; RCW 4.96.020(4). We require strict compliance with the procedural requirements of the claim filing statute. Accordingly, we affirm the superior court in that regard.

C. All claims against Terry Barclay
¶ 53 In addition to the above arguments, Barclay asserts that the trial court properly dismissed the claims against her because she was not served until 11 months after the statute of limitations had expired. She also claims that because she played no role in obtaining the warrant, she was not liable for trespass or § 1983 violations. We find neither argument convincing.

1. The statute of limitations argument
¶ 54 In Sidis v. Brodie/Dohrmann, Inc., 117 Wash.2d 325, 329, 815 P.2d 781 (1991), this court read RCW 4.16.170[17] literally to mean that service on at least one *331 defendant before the statute of limitations expires tolls the statute with respect to other named defendants as long as filing is completed within 90 days of the initial service. Conversely, if filing is completed prior to expiration of the statute of limitations, service must be had on at least one defendant within 90 days to toll the statute with respect to other named defendants. Id. We reasoned that it is "arguably unfair to require a plaintiff to serve all defendants within a set limitation period, when it may be difficult or impossible to determine the actual location of some defendants before discovery is underway." Id. at 330, 815 P.2d 781.
¶ 55 Barclay argues that because service on the Renton defendants was improper for failure to comply with the claim filing statute, the tolling provision is inapplicable. However, Bosteder effectively served the individual Renton employees prior to the expiration of the statute of limitations, and the claim filing statute does not apply to those individuals. Further, Bosteder's service was not deficient with respect to the § 1983 claims he brought against the city and the individual employees. Thus, service was properly effected on at least one defendant prior to the expiration of the statute and the complaints were filed within 90 days of that service, thereby tolling the statute of limitations against Barclay under RCW 4.16.170.
¶ 56 Barclay goes on to argue that even if the action were properly commenced so as to toll the statute of limitations, the failure to comply with court rules and the eight month delay in service to Barclay should result in dismissal.[18] We did state in Sidis that although the period of time the statute is tolled is "unspecified," the period could not be "infinite," and "[p]laintiffs must proceed with their cases in a timely manner as required by court rules." Sidis, 117 Wash.2d at 329, 815 P.2d 781. We noted that the failure to timely serve all defendants could be dispositive: "A plaintiff who fails to serve each defendant risks losing the right to proceed against unserved defendants if the served defendant is dismissed." Id. at 329-30, 815 P.2d 781.
¶ 57 Bosteder has not provided any rationale for his eight-month-plus delay. On the other hand, Barclay has failed to demonstrate how she was prejudiced by any delay in service, or how a court rule was violated.[19] Although there is little guidance for determining whether the eight month delay was excessive, a few facts warrant consideration. First, unlike the other individuals named as defendants, Barclay was an employee of King County. Bosteder apparently believed that Barclay was an employee of the city when he served and filed his complaints. This misunderstanding may have contributed toward the delayed service of Barclay in her personal capacity. Also, Barclay was served before any claims were dismissed against the Renton defendants, so we do not have a situation like the one contemplated in Sidis where we would have to decide whether dismissal of a claim against one defendant necessitates dismissal against others not yet served. This potential for dismissal serves to limit how long a plaintiff can wait to serve all named defendants. Even though Bosteder was able to avoid that risk in this instance, it still limited how long he could have waited to serve Barclay.
¶ 58 It was Barclay's burden upon motion for summary judgment to show that she was entitled to judgment as a matter of law. CR 56. She failed to show how the delay harmed her or what court rule was violated by the delay in service.

2. Barclay's lack of involvement in obtaining the warrant
¶ 59 Barclay also asserts that dismissal of all claims against her was proper because she did not participate in seeking and obtaining the warrant. She alleged that she was invited to participate by one of the CPR Team members and that she believed *332 that they had the permission of Bosteder. But she concedes that she was present on the property when the other individual defendants were conducting the search. The fundamental act that is being challenged by Bosteder is the unlawful intrusion on his property. "A trespass is an intrusion onto the property of another that interferes with the other's right to exclusive possession." Phillips v. King County, 136 Wash.2d 946, 957 n. 4, 968 P.2d 871 (1998) (citing Hedlund v. White, 67 Wash.App. 409, 418 n. 12, 836 P.2d 250 (1992)). There are sufficient facts in the record to support Bosteder's allegation of intrusion onto his property.
¶ 60 We hold, therefore, that the statute of limitations was effectively tolled against Barclay and that Barclay's lack of participation in obtaining the warrant does not bar her liability for trespass as a matter of law. Therefore, dismissal would be improper based upon those grounds and our above decision stands.

III. CONCLUSION
¶ 61 We affirm on other grounds the trial court's dismissal of the § 1983 claim against the individuals, but reverse the dismissal of the § 1983 claim against the city and remand for further proceedings consistent with this opinion. We affirm the dismissal of the trespass claim against the city and the individuals to the extent that Bosteder alleges they acted within the scope of their employment and reverse and remand the dismissal of the trespass claim against the individuals to the extent that Bosteder alleges they acted outside of the scope of their employment.
C. JOHNSON, MADSEN and BARIDGE, JJ., concur.
SANDERS, J. (concurring in part, dissenting in part).
¶ 62 I agree with the majority that the search was unreasonable under the fourth amendment to the United States Constitution. However, I disagree the individual defendants are entitled to qualified immunity from liability under 42 U.S.C. § 1983 because they did not violate a "clearly established" right. It was clearly established by definitive case law that this warrant was void. Further, this violation occurred as a result of a municipal custom or policy which mandates municipal liability as well. On the trespass claim, while I agree with the majority that Darwin Bosteder did not comply with the nonclaim statute as to the city, I disagree the statute applies to individuals.

I. The Individual Defendants Are Not Entitled to Qualified Immunity
¶ 63 Government officers are liable for conduct which deprives people of their constitutional rights. 42 U.S.C. § 1983. Officials may claim an affirmative defense of qualified immunity, but that defense "must fail if the constitutional right allegedly violated was clearly established at the time of the act." Staats v. Brown, 139 Wash.2d 757, 763, 991 P.2d 615 (2000); see also Anderson v. Creighton, 483 U.S. 635, 638-39, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The government official bears the burden to prove the defense. Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ("Qualified or `good faith' immunity is an affirmative defense that must be pleaded by a defendant official."). If the defense is raised in a motion to dismiss, the allegations in the plaintiff's complaint control the inquiry into the reasonableness of the official's actions. See Behrens v. Pelletier, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) ("At that earlier stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for `objective legal reasonableness.'"). The United States Supreme Court has defined this standard as an objective test: "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the `objective legal reasonableness' of the action." Anderson, 483 U.S. at 639, 107 S.Ct. 3034 (emphasis added).
¶ 64 The Fourth Amendment prohibits unreasonable searches and seizures. With only a few limited exceptions, this right is protected by requiring government officials to obtain a valid warrant before searching one's property or person. See, e.g., Camara v. Mun. Court of San Francisco, 387 U.S. 523, 528-29, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). *333 Administrative searches based on alleged civil infractions violate the Fourth Amendment unless conducted under a valid warrant. Id. at 534, 87 S.Ct. 1727. While the city claims to have searched Bosteder's property under a warrant, City of Seattle v. McCready, 124 Wash.2d 300, 877 P.2d 686 (1994) (McCready II) makes it perfectly clear that administrative warrants issued without authority of statute or court rule are invalid. There was no statute or court rule authorizing these warrants. Because the search was objectively based on a void warrant-clearly void under McCready -the individual defendants who obtained the warrant and searched the premises cannot meet their burden to establish qualified immunity under the facts alleged in the complaint.
¶ 65 The majority admits the clarity of our case law: "Without question, the individuals here should have known that in the McCready decisions we prohibited conduct similar to that at issue today, and ought to have refrained from engaging in such conduct entirely." Majority at 325. However, the majority then emphasizes that the McCready decisions were based on state constitutional law rather than the Fourth Amendment. Perhaps so; however, a void state warrant, it is clearly established, is no warrant for Fourth Amendment purposes, either.
¶ 66 "There is . . . no general common law right to issue search warrants." City of Seattle v. McCready, 123 Wash.2d 260, 274, 868 P.2d 134 (1994) (McCready I); see also id. at 276, 868 P.2d 134 (listing opinions from other jurisdictions reaching the same conclusion). Invasions of privacy must be authorized by cognizable legal authority. Federal courts applying the Fourth Amendment have made this point clear: "[W]hen a warrant is signed by someone who lacks the legal authority necessary to issue search warrants, the warrant is void ab initio." United States v. Scott, 260 F.3d 512, 515 (6th Cir.2001).
¶ 67 Since there is no general power to issue warrants, that authority must be derived from some positive source, either a statute or a court rule. See McCready II, 124 Wash.2d at 309, 877 P.2d 686. McCready II struck down administrative warrants based on probable cause of a civil violation in the absence of a statute or court rule which authorized such a warrant. Id. We applied state law in the McCready cases, but that law necessarily leads to a Fourth Amendment violation here. See United States v. Finazzo, 583 F.2d 837, 844 (6th Cir.1978) (concluding that "federal courts do not have an inherent power to issue search warrants in the absence of a statute"), vacated on other grounds, 441 U.S. 929, 99 S.Ct. 2047, 60 L.Ed.2d 657 (1979).
¶ 68 If there is no general right to issue a warrant and any warrant issued without authority is void under the Fourth Amendment, then in the absence of that statute or court rule no court may issue a valid administrative warrant to search for evidence of a civil infraction. We have clearly held such.
¶ 69 The majority recognizes the logic of this argument but rejects the conclusion because we have not yet applied these clearly established precedents in this particular factual context. However, such is not necessary to "clearly establish" a legal right. See Anderson, 483 U.S. at 640, 107 S.Ct. 3034 ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful. . . ."); Mitchell v. Forsyth, 472 U.S. 511, 535 n. 12, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ("We do not intend to suggest that an official is always immune from liability or suit for a warrantless search merely because the warrant requirement has never explicitly been held to apply to a search conducted in identical circumstances.").

II. City Policy Violates the United States Constitution
¶ 70 The majority also reverses the trial court on the city's liability under § 1983 and remands for further fact finding. Majority at 326-327. I dissent because the record clearly demonstrates a city policy that caused, and was the moving force behind, this constitutional violation.
¶ 71 Municipalities are liable as "persons" under § 1983 when "the action that is alleged to be unconstitutional implements or executes *334 a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "[F]ormal approval through the body's official decisionmaking channels" is not necessary for municipal liability. Id. at 691, 98 S.Ct. 2018. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694, 98 S.Ct. 2018 (emphasis added); see also Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403-04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Our facts clearly meet this standard, demonstrating a city policy caused the constitutional violation.
¶ 72 By ordinance Renton adopted both the 1997 Uniform Housing Code and the 1997 Uniform Code for the Abatement of Dangerous Buildings published by the International Conference of Building Officials. These codes authorize building officials to enter buildings suspected of code violations. See Unif. Housing Code § 201.2; Unif.Code for the Abatement of Dangerous Bldgs. § 201.3. If the building is occupied, the officials must ask permission to enter; if the building is unoccupied, they must first try to locate the owner. "If entry is refused, the building official shall have recourse to the remedies provided by law to secure entry." Unif. Housing Code § 201.2; Unif.Code for the Abatement of Dangerous Bldgs. § 201.3. The remedy sought in this case was a warrant to search the premises. Clerk's Papers (CP) at 34-35. The sergeant in charge of the Community Patrol Resource Team (CPR Team) stated in his affidavit for the search warrant: "Both of these Codes provide for the application of search warrants for the purpose of inspecting a property for violations of the codes." CP at 34. City policy thus favored a civil warrant as the proper recourse when entry was refused; however as previously noted, such warrants are void.
¶ 73 The city created the CPR Team to work "in conjunction with the Code Compliance Enforcement Section of the City of Renton's Building and Land Development Division and the public to clean up and/or abate nuisance structures." Id. This specialized team was to address the city's problem with subcode buildings. The city authorized the team to seek legal remedies, including search warrants.[1] They obviously followed city policy when they did so. Therefore the city is liable for the constitutional violations of its authorized agents when carrying out city policy. Four members of this team submitted affidavits to obtain the warrant. CP at 38-45. They were accompanied on the search by an assistant fire marshal, a code compliance officer, and a King County health inspector.[2] The actions of these authorized officials in obtaining and executing the search warrant "may fairly be said to represent official policy." Monell, 436 U.S. at 694, 98 S.Ct. 2018.
¶ 74 Further, the record demonstrates the police chief and the mayor approved of the officers' conduct and promised to use similar methods in the future if landowners did not cooperate with the inspections. CP at 55-56. At a city council meeting, the police chief noted that many departments cooperated in the search, including, "`the Planning/Building/Public Works Department, the Fire Department, the Development Services Division, King County's Public Health Department and Renton's City Attorney's Office.'" CP at 56 (quoting May 3, 1999 City Council minutes). City attorneys were involved in the process. The police chief and the mayor applauded the effort, and their ratification also leads to municipal liability. See City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). These actors were not rogues beyond municipal imprimatur but were carrying *335 out their duties as defined by municipal policy.
¶ 75 This city policy was the moving force behind the violation of Bosteder's constitutional rights. The city acts through its authorized agents, the contents of its ordinances, and the ratification of its officials. Municipal liability under § 1983 is thus established without material dispute of fact. We should remand to the trial court for determination of damages and other appropriate relief in light of this conclusion; however, municipal liability under 42 U.S.C. § 1983 has been established as a matter of law. No remand to determine liability is therefore necessary.

III. The Claim Filing Statute Does Not Apply to Individuals
¶ 76 The majority ignores the plain meaning of statutory language and instead divines legislative intent from the statute's "`spirit.'" See majority at 329 (quoting Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles, 148 Wash.2d 224, 239, 59 P.3d 655 (2002)). I cannot agree since the best indicators of legislative intent are the words used in the statute given their plain and ordinary meaning.
¶ 77 RCW 4.96.020(4) requires anyone who claims damages against a "local governmental entity" for tortious conduct to first file the claim with the city 60 days before commencing a lawsuit.[3] RCW 4.96.010(2) defines local governmental entity as follows: "Unless the context clearly requires otherwise, for the purposes of this chapter, `local governmental entity' means a county, city, town, special district, municipal corporation as defined in RCW 39.50.010, quasi-municipal corporation, or public hospital." By its terms the statute plainly does not apply to individuals.
¶ 78 As the majority notes, we also reached this conclusion when applying a similarly worded city ordinance in Boss v. City of Spokane, 63 Wash.2d 305, 387 P.2d 67 (1963). The ordinance in Boss required anyone asserting the city or its officers had committed a tort to file a claim for damages within 30 days. Id. at 308, 387 P.2d 67. The ordinance also stated: "`Failure to present such claim in writing, duly verified in form, manner and time aforesaid, shall bar any action against the city for such alleged damage or injury.'" Id. at 309, 387 P.2d 67 (quoting the city charter). We held the bar did not apply to officials in their individual capacity because the legislature could have easily added the words "or any officer" if that were the legislature's intent. Id.
¶ 79 Similarly, the legislature could easily have added a few words to RCW 4.96.020(4) if it intended the statute to apply to city officials as individuals. It did not include those words, however, leaving the obvious conclusion that it did not so intend.
¶ 80 RCW 4.96.010(1) makes local governments responsible for the tortious conduct of their "officers, employees, or volunteers while performing or in good faith purporting to perform their official duties." The same section states the requirement of filing a claim for damages as a condition precedent to a civil action. Thus, a person can sue the local government for the actions of its officers and must observe the claim filing provisions of the statute. But if the person sues the officers individually, the statute does not require filing a claim as a condition precedent. It says nothing whatsoever about such a filing.[4]
*336 ¶ 81 The majority recognizes the force of the statutory language but attempts to circumvent its plain meaning by arguing the legislature couldn't have meant that. Majority at 329. It points to RCW 4.96.041, which requires local governments to pay for the torts of employees committed within the scope of employment, and reasons this statute puts governments on the hook financially for suits against their employees, creating a loophole in that claimants can reach into the government's pockets without first filing a claim. Yes, that is the consequence of what the legislature said, but that is what it said. Moreover, individuals do not need to investigate their own conduct and remedy it, which is a rationale behind the claim filing statute. See Medina v. Pub. Util. Dist. No. 1 of Benton County, 147 Wash.2d 303, 310, 53 P.3d 993 (2002).
¶ 82 The language is unmistakably clear: the claim filing statute applies only to local governmental entities, not to individuals. The court cannot legitimately ignore a statute's plain meaning simply because it wants to protect government employee tortfeasors from responsibility for their misconduct. Bosteder's trespass claim against these individual defendants is valid and should go to trial.
¶ 83 I dissent.
ALEXANDER, C.J., OWENS and CHAMBERS, JJ., concur.
IRELAND, J.[*] (concurring in part and dissenting in part).
¶ 84 I agree with the majority except as it holds that the claim filing statute applies to individuals. The statute does not state so, and I do not think we should second-guess the wisdom of the legislature in failing to provide this protection for individuals. "It is the function of the judiciary to test legislation against constitutional restrictions. Courts do not review the wisdom of legislative acts or the policy contained therein." Petstel, Inc. v. County of King, 77 Wash.2d 144, 151, 459 P.2d 937 (1969). The legislature should be credited with having considered whether suits against individuals or officers require claim filing, given the very explicit language of RCW 4.96.010(2) defining "local government entity."
NOTES
[1] The members of the Renton CPR Team who entered Bosteder's property include respondents Robert L. Arthur, James Gray, Charles J. Karlewicz, Christine Paget, James D. Gould, and Mark Klinke. Respondent Terry Barclay, an inspector for the King County Department of Public Health, was also present at the invitation of respondent Arthur.
[2] The notice and order also listed alternative options for the owner.
[3] Pursuant to RCW 4.96.020(4), individuals wishing to assert a tort claim against a local governmental entity must first file a claim for damages with the municipality and wait 60 days to commence a legal action. The applicable statute of limitations is tolled for the 60-day waiting period. Local governmental entities include municipalities and counties. RCW 4.96.010(2).
[4] As respondent Barclay was not an employee of the city, but rather of King County, she was represented separately by the King County Prosecuting Attorney. Thus, "Renton defendants" refers to all defendants except Barclay and her spouse.
[5] Barclay also asserted grounds for summary judgment pertaining specifically to her that are discussed in section II.C.
[6] In contrast, other states have specifically provided a procedure for obtaining warrants in these kinds of searches. See, e.g., Cal.Civ.Proc.Code §§ 1822.50-.60; Tenn.Code Ann. § 68-120-117; Tex.Crim. Proc.Code Ann. § 18.05(a); Vt. Stat. Ann. tit. 24, § 5003(8); Wis. Stat. Ann. § 66.0119. Washington has provided for a remedy for fire officials to seek search warrants when their right of entry has been denied. See RCW 59.18.150(2). There is no such provision for suspected building and housing code violations.
[7] But see Boliden Metech, Inc. v. United States, 695 F.Supp. 77, 85 (D.R.I.1988) ("This Court holds that TSCA implicitly grants the EPA statutory authority to seek ex parte warrants.").
[8] In Cooper, the Court held that a search of a vehicle pursuant to a lawful impoundment was reasonable despite there being no state law that provided for such a search. Cooper, 386 U.S. at 61, 87 S.Ct. 788. In contrast to administrative searches of the type at issue in this case and in Owens, searches pursuant to impoundment are a recognized exception to the warrant requirement of the Fourth Amendment. See South Dakota v. Opperman, 428 U.S. 364, 373, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (citing Cooper and stating that "this Court has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents."). Because no warrant was required, there was no need to inquire as to whether a warrant was properly sought and issued, which is the crux of the matter in the present case.
[9] We also recognize that the parties in the McCready cases did not argue, as Bosteder does here, that the Fourth Amendment requires authority of law for issuance of a warrant.
[10] Bosteder attempts to argue two additional grounds for imposing municipal liability but, in fact, those grounds are subsumed under the above analysis. First, Bosteder claims that a municipality will be held liable for the deliberate choice of an individual who is normally charged with policy making or for one who is delegated that authority. Despite Bosteder's attempt to characterize this as additional to a policy or custom, the United States Supreme Court has not made such a distinction. Rather, it is discussed in the context of whether that individual's decision can be fairly called a "`policy' that triggers municipal liability." Brown, 520 U.S. at 404, 117 S.Ct. 1382. Second, Bosteder argues that a municipality will be liable if it approves of an employee's illegal conduct after the fact. Again, however, a municipality's ratification of an unlawful act imposes liability on the municipality because such approval serves as a policy or custom-the final decision of the municipality. City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (plurality opinion).
[11] The concurrence/dissent feels "the record clearly demonstrates a city policy that caused, and was the moving force behind, this constitutional violation." Concurrence/dissent (Sanders, J.) at 333-334. It does not. That one or more members of the CPR team felt that the Housing Code and Uniform Building Code "`provide for the application of search warrants'" does not automatically transfer such belief to the city, or indicate a city policy that favors a warrant as the "proper recourse when entry was refused." Id. at 330 (quoting CP at 34). Additionally, portions of the record cited by the concurrence/dissent to support the argument that the city approved of the CPR Team's actions are actually pleadings submitted by Bosteder in which Bosteder purported to quote a newspaper article and minutes from a city council meeting. See id. at 320-321. Bosteder did not provide the court with copies of the original newspaper article or the city council meeting minutes. It is inappropriate to attribute the quoted material to the city and hold the city liable in part because of those statements based on Bosteder's bald assertions.
[12] The Barclays also claim violation of King County Code (KCC) 4.12.070, which applies to "[a]ll claims against the county for damages arising out of tortious conduct." Because the relevant analysis of KCC 4.12.070 would mirror our analysis of RCW 4.96.020(4), it is subsumed under that analysis.
[13] In his complaint, Bosteder alleged that the individuals acted within and alternatively outside of the scope of their employment. We therefore leave intact the claim that the individuals acted tortiously outside of the scope of their employment and remand to the superior court subject to any other reason for dismissal.
[14] Although respondents now attempt to limit Boss to intentional torts, we made no such distinction but, rather, based the holding on a basic reading of the ordinance.
[15] RCW 4.96.010(2) provides in full: "Unless the context clearly requires otherwise, for the purposes of this chapter, `local governmental entity' means a county, city, town, special district, municipal corporation as defined in RCW 39.50.010, quasi-municipal corporation, or public hospital."
[16] The state tort claims act has a similar framework, and presumably our analysis today would apply to claims against state employees in the future. See ch. 4.92 RCW.
[17] RCW 4.16.170 provides:

For the purpose of tolling any statute of limitations an action shall be deemed commenced when the complaint is filed or summons is served whichever occurs first. If service has not been had on the defendant prior to the filing of the complaint, the plaintiff shall cause one or more of the defendants to be served personally, or commence service by publication within ninety days from the date of filing the complaint. If the action is commenced by service on one or more of the defendants or by publication, the plaintiff shall file the summons and complaint within ninety days from the date of service. If following service, the complaint is not so filed, or following filing, service is not so made, the action shall be deemed to not have been commenced for purposes of tolling the statute of limitations.
[18] Although Barclay asserts the court rule being violated was the requirement that plaintiffs file a confirmation of service by the date indicated in the case schedule, she fails to cite to a single rule or to any document in the record that would support her argument.
[19] Both parties give this point of argument short shrift in their briefing. Although Barclay alleges Bosteder violated a court rule, she fails to provide the citation for any such rule.
[1] "Members of the CPR Team have been deemed `Authorized Representatives' of the Code Compliance Enforcement Section of the City of Renton's Building and Land Development Division and as such are authorized to seek this search warrant." CP at 34; see also CP at 47.
[2] Fire marshals and building officials are specifically authorized to perform inspections. Unif.Code for the Abatement of Dangerous Bldgs. § 201.2.
[3] The statute reads in full:

(4) No action shall be commenced against any local governmental entity for damages arising out of tortious conduct until sixty days have elapsed after the claim has first been presented to and filed with the governing body thereof. The applicable period of limitations within which an action must be commenced shall be tolled during the sixty-day period.
RCW 4.96.020(4).
[4] Other states' claim filing statutes support this view. See, e.g., Ariz.Rev.Stat. § 12-821.01(A) ("Persons who have claims against a public entity or a public employee shall file claims. . . ." (emphasis added)); Colo.Rev.Stat. § 24-10-109(1) ("Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment . . . shall file written notice." (emphasis added)); N.J. Stat. Ann. § 59:8-3 ("No action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented. . . ." (emphasis added)); S.D. Codified Laws § 3-21-2 ("No action . . . may be maintained against the public entity or its employees unless . . . written notice . . . is given to the public entity. . . ." (emphasis added)); Utah Code Ann. § 63-30d-401(2) ("Any person having a claim against a governmental entity, or against its employee for an act or omission occurring during the performance of the employee's duties . . ." shall file a written notice . . . . (emphasis added)). In addition, Georgia has interpreted its claim filing statute, which is very similar to ours, to not apply to individual officers. See Jacobs v. Littleton, 241 Ga.App. 403, 405, 525 S.E.2d 433 (1999) ("The statute requires notice only if the claim is against the municipality; it does not require ante litem notice to individual employees of a municipality.") (interpreting Ga.Code Ann. § 36-33-5).
[*] Justice Faith Ireland is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).